FILED
Terry Deinlein, Acting Clerk
Cincinnati, Ohio

03 NOV 13 PM 4:21

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| John Sayya, *pro se*, et al., | ) Case No.: 01-CV-459 |
| | ) |
| Plaintiffs, | ) Senior District Judge Herman J. Weber |
| | ) |
| v. | ) OBJECTIONS TO MAGISTRATE |
| | ) JUDGE MICHAEL R. MERZ'S REPORT |
| Waynoka Property Owners | ) AND RECOMMENDATIONS WITH |
| Association, Inc., et al., | ) ACCOMPANYING MEMORANDUM IN |
| | ) SUPPORT OF SAID OBJECTIONS |
| Defendants. | ) |

**NOW COME** Plaintiffs, objecting to Magistrate Judge Michael R. Merz's ("Judge Merz") Report and Recommendations ("Report"). In particular, the Report's concluding statement that: "Plaintiffs have not presented any disqualifying evidence with respect to Judge Weber. Their Motion for Recusal should be DENIED." The reasons in support of their objections are more particularly set forth in the accompanying memorandum.

### MEMORANDUM

Judge Merz's Report did not address the prejudicial failure of Judge Weber to address the motions filed by Plaintiffs, pursuant to Rule 11, against Attorneys Stephen Yeager's ("Yeager") and defendant attorney Herbert Freeman's ("Freeman") fraudulent statements and lies.

The Report misleads. It states on page 3 that Plaintiffs "...rely entirely on the record in this case." How cunningly deceptive, as if those records were not important legal documents. Any first year law student would know they are extremely important. Documents written to both state and federal courts and signed by attorneys or other parties carry with them *the* potential of severe sanctions. As far as evidence is concerned, how more important are documents that can be sanctioned if intentionally falsified? For the Report to downplay their importance is disturbingly curious. But, then, the rotten history of this case is "disturbingly curious."

1

Plaintiffs strenuously object to this strained and slanted one-sided Report.

## OBJECTIONS TO REPORT

Plaintiffs' objections stems from the fact that none of the motions calling for sanctions, pursuant to Rule 11, were ever addressed or properly gone into by this Report. The *key* issue in asking for Judge Weber's recusal was the disturbing fact that he, as did Judge Hogan, violently had violated Plaintiffs' Constitutional Fourteenth Amendment Right to due process by law.

To argue otherwise goes against the very meaning of justness and fairness.

## TWO CASES IN POINT

### The first case—*Freeman*

If only Judge Merz had taken a closer look, he would have discover that:

Starting on page 4 in their Motion to Recuse Judge Weber, Plaintiffs went into great detail reviewing the evidence contained in the Court Docket that illustrated how their due process rights were egregiously violated, first by Judge Hogan and then by Judge Weber.

In their Motion to Recuse Judge Weber, Plaintiffs listed four documents taken directly from the official court docket showing that Freeman maliciously lied and misrepresented himself:

1. **Doc. #1** evidenced that Plaintiffs had filed their Original Complaint on 07/11/01, but never actually served it on any of the defendants, at anytime, whatsoever.

2. **Doc. # 5** evidenced the fact that Freeman, of his own volition, took it upon himself to file a fraudulent motion to dismiss the Complaint, calling for sanctions against Plaintiffs, *without any of the thirty-one named defendants knowledge or consent.*

3. **Doc. #24** evidenced the fact that Plaintiffs made a motion for sanctions and to disqualify Freeman, notifying the Court that Freeman had lied and fraudulently misled the Court into believing that he was the "attorney of record" for thirty-one defendants, when he was not.

4. **Doc. #72** evidenced the fact that Judge Hogan made a conference phone call to Plaintiffs and other attorneys, in which he stated at the start that he was not going into "any of these

ridiculous motions filed by Plaintiffs." Judge Hogan went on to say that the only reason for his conference call was to determine exactly who was the attorney of record for the thirty-one defendants charged in the lawsuit, at which time Plaintiff Sayyah replied that Freeman had fraudulently interjected himself, without anyone's knowledge or consent, illegally and unlawfully into the case. In a harsh tone, Judge Hogan questioned how Plaintiff knew that to be true. Plaintiff Sayyah replied that there were signed affidavits by many of the thirty-one defendants attached to those "ridiculous motions" stating as much. Whereupon, Judge Hogan abruptly announced that he no longer would be involved in the case because his son was an attorney on the legal staff of the insurance company that had retained Yeager to represent the thirty-one named defendants a lawsuit. He made a quick goodbye, immediately hung up the phone, ending the conference call.

It should have been duly noted in the Report that the above *compelling* documented motions should have been serious enough to be addressed by Judge Hogan and, when he recused himself, by Judge Weber, especially with the pending "emergency hearing" called for by Plaintiffs to stop a meeting called for by Yeager and Freeman. It must be remembered that Plaintiffs had filed numerous and grievous motions charging both Yeager and Freeman agregious lying and fraudulent deception and false misrepresentation. Those glaring charges of professional misconduct, put Yeager's and Freeman's ability to represent the thirty-one defendants in total and complete jeopardy. Their very honesty, with supporting evidence, was at issue. How could any judge permit them to hold such a meeting is beyond belief. There was ample evidence that Yeager and Freeman had lied and deceived the Court as well as Plaintiffs. And yet, in spite of the possibility those well-supported claims were true, how could an experienced senior district judge allow that to go forward is scandalous. And there is no hiding from that fact.

To allow two possible lying, deceitful attorneys to address defendants at an open meeting who are totally unaware of the egregious charges of deception and fraud to be exposed and victimized

and whom the Court had never took the time to investigate and resolve, not only goes against common sense but also against the very Rules of Professional Responsibility themselves.

Why? Why did not Judge Weber take time to investigate? It definitely was called for.

Plaintiffs believe that bias and the fact that they were *pro se* had a lot to do with his lack of concern, more will be evidenced and discussed later in this objection response to the Report.

Whatever the reason, an honest, studied look at the above documented evidence as well as a host of other compelling documents in the court record by Judge Merz would have revealed the utter bias of Judge Hogan and Judge Weber, and would have discovered that Freeman, as an officer of the court, was less than honest or truthful. The depth and detail of the numerous lies and fraudulent statements he was willing to make, not only speaks ill of Freeman's character but to the bias of those who really knew *the truth* but, then, looked the other way. For this Report to gloss over the documented evidence and what it pointed to, something is terribly wrong and amiss. The *stunning* fact is that the documented evidence cried out to be heard, and a biased Judge Hogan and Judge Weber refused to listen and give due process to Plaintiffs. For this Report to suggest otherwise flies in the face of the reality of court-documented evidence.

To make matters worse, Freeman was not alone; Yeager had lied and fabricated as well.

### The Second Case—*Yeager*

1. **Doc. #31** evidenced that Yeager, as attorney of record, made his answer on behalf of the thirty-one defendants that were insured and had been assigned him by the insurance company that had retained Yeager lawfully to represent.

2. **Doc. #33** evidenced the fact that Plaintiffs made a motion to disqualify Yeager from representing the thirty-one that had been assigned him as counsel of record, claiming that their was evidence that thirty-one defendants may in serious conflict with one another.

3. **Doc. #40** evidenced that Yeager made a motion to extend time to file a memorandum in opposition, in which he *explicitly* told the court he needed to *fully* address the issue of

4

possible conflicted interests among themselves with *each* defendant to determine if there were any conflicts of interest, in which case there would be a serious problem.

4. **Doc. #48** evidenced that Yeager filed his *signed* memorandum in opposition to Plaintiffs' motion to disqualify, stating that he had fully addressed the conflicts of interest between the defendants and the issue of potentially harming testimony, and found that they were in "complete harmony" with one another—*which turned out to be not true, but false.*

5. **Doc. #51** evidenced that Plaintiffs made a motion charging fraudulent misrepresentation with malicious intent to deceive the court and Plaintiffs by Yeager, with severe sanctions to be imposed pursuant to Rule 11, with signed affidavits and signed statements by the same defendants Yeager claimed he had *fully* addressed the conflicts of interest and potentially harming testimony, in which they claimed denied that Yeager had ever got in touch with them to discuss the "issues of conflicted and harmful testimony." In fact, many defendants who were supposed to be represented by Yeager stated that they had never met Yeager, nor had he ever contacted them, either by phone or in person.

**Curiously**, Judge Hogan never responded to Plaintiffs' serious charges—*total silence.*

Motions filed by Plaintiffs charging Yeager with serious ethical violations of professional misconduct that could possibly cost Yeager dearly—*and yet, complete and total silence.*

That complete and total silence by Judge Hogan and Judge Weber speaks volumes.

Talk about speaking volumes, the Report never mentions it—*complete and total silence.*

It troubles Plaintiff to think that maybe, just maybe, this Report was slightly slanted to get Judge Hogan and Judge Webber off the proverbial "hot seat?"

Sure raises nagging possibility that this Report was not meant to be fair or even-handed.

Oh, well, what do two dumb *pro se* Plaintiffs really know?

Disappointed? Upset? Discouraged? You betcha! To say anything less would not be truthful or candid. Bu in spite of being disappointed, upset, and discouraged, Plaintiffs hold a great deal

of hope in the basic integrity and fairness of judges and the U.S legal system, and firmly place their abiding trust and belief that when the dust finally settles down, and that in the end, because of the more than many good and fair judges, justice ultimately will be served.

But until then, back to the Report, which misleads, as follows:

On page 3 the Report states that "Plaintiffs claim that Judge Weber somehow denied them due process by not ruling on the motions filed by them in timely fashion, particularly complaining of Doc. Nos. 7, 24, 33, 37, 37, 44, 51, 62, 70, 71, 82, 83, and 94. The first seven of these were decided September 19, 2002, at which time the oldest had been ripe for decision for less than nine months.

Plaintiffs will take to task the above assertions as totally misleading.

The Report makes the assertion that "[t]he first seven of these were decided September 19, 2002, at which time the oldest had been ripe for decision for less than nine months," which are Doc. Nos. 7, 24, 33, 37, 44, 51 and 62. Plaintiffs will address each of those docs, as follow:

1. **Doc. #7** the Report **is correct**, the motion was dismissed in favor of Plaintiffs.

2. **Doc. #24** the Report **is false**, that motion was never addressed. It was a motion asking the court to sanction Freeman pursuant to Rule 11, which is undecided and still pending.

3. **Doc. #33** the Report **is false**, that motion was never addressed. It was a motion asking the court to disqualify Yeager, which is undecided and still pending.

4. **Doc. #37** the Report **is false**, that motion was never addressed. It was a motion calling for sanctions against Freeman, which is undecided and still pending.

5. **Doc. #44** the Report **is false**, that motion was never addressed. It was a motion to grant motion of 1/4/02 to disqualify Yeager, which is undecided and still pending.

6. **Doc. #51** the Report **is false**, that motion was never addressed. It was a motion to disqualify Yeager, which is undecided and still pending.

7. **Doc. #62** the Report **is correct**, that motion was granted to amend complaint by Plaintiffs.

Five out of seven, so much for truthful accuracy, but then what else is new.

The Report gets even better.

The Report stated that "[w]ithin a short period of time after the other motions were filed, Plaintiffs sought to have Judge Weber removed from the case."

How utterly deceptive?

Putting aside the fact that five of the seven were incorrectly stated and never were addressed and is still pending, Plaintiffs will show that the above quote not only was false but also was totally misleading, and Plaintiffs will assert not by accident, but by purpose.

Plaintiffs point out that the overwhelming motions made by Plaintiffs asking for sanctions against Yeager and/or against Freeman for their constant lying behavior, which were filed long before Judge Hogan recused himself, and were never looked into by Judge Weber.

Those motions contained serious and a pivotal questions that should have been addressed fully and quickly, because they dealt with two attorneys misrepresentations and falsifications of critical importance to the case in chief pending before the Court. For this Report to brush aside and lay it to the fact that Judge Weber was annoyed at the number of motions that Plaintiffs were filing is to ignore the reality of what was going on. Two attorneys made the claim that each was the attorney of record. They both can not be fright. One of them misled the Court, and to say that Judge Hogan and Judge Weber were annoyed really takes the cake. If they were annoyed over such serious and legitimate matters, they should seriously consider another profession.

This pending lawsuit concerns the welfare of 2800 property owners, many of whom are friends and neighbors of Plaintiffs. These are serious and momentous charges that impact the welfare and wellbeing of a large segment of the Brown County Ohior population. This is seriousl business, and has taken a great amount of time to prosecute and defend.

Plaintiffs did not bring this lawsuit forward to play games.

For Judge Merz not have given Plaintiffs who are *pro se* more adequate time to fully respond and object to his Report is patently not fair or even-handed. Today is the 13th day of November. It is the day of the deadline to file his objection. Plaintiff Sayyah has just looked up at the clock. It is 2:00 P.M., and there is little time left, and so much more to state and object. However, Plaintiff Sayyah time has run out, and must leave for the hour and half drive to the federal court to file this objection response on time.

So little time, and so much more to say.

Left with little or no choice, all Plaintiffs can do is quickly attach some statements, and ask that, at least, they should be given the look they deserve, because they relate to this case.

In the few minutes left, Plaintiffs would like to point to the hints of Judge Weber's bias.

In the transcript of Judge Weber's hearing of November 8, 2002, the exchange between Plaintiff Sayyah and Judge Weber is quite revealing, as follows:

On page 5 of the transcript, just a few moments into Defendant Sayyah's introductory statement, Judge Weber interrupted and said: "Please, now, how long do you contemplate speaking?"

After another moment, on page 7, Judge Weber again interrupted and said: "Now, please don't get excited, sir."

On the same page 7, Judge Weber again interrupted and said: "But, please, I want to part of your solution. I don't want to be part of your problem. Please don't make me a problem."

On the same page 7, Judge Weber followed up and said, ""I can be a terrible problem."

Later, on page 14, Judge Weber bluntly commented that: "I don't pay attention to pro se defendants."

Later, on page 30, there was an exchange between Plaintiff Sayyah and Judge Weber:

Judge Weber: "I don't want to disturb your discourse."

Plaintiff Sayyah: "Sure."

Judge Weber: "Go ahead. How long do you – how long do you want me to give you?"

Plaintiff Sayyah: "Just two minutes more."

Judge Weber: "Two minutes. I'll give you three minutes. How's that? Good deal?

Time is running short. Plaintiff Sayyah must leave. What a shame there were so much more to say that would support the fact that Judge Weber is biased, and that Plaintiffs need to have a fair and caring and honest Judge. Plaintiffs again ask that this court grant them more time to amend and adequately present all of the evidence that would illustrate the bias of Judge Weber.

Time is up. All that Plaintiffs can say is that the Court Record needs to be intently scrutinized and reviewed, the devil as well as the evidence is in those docs.

Attached please find the statements of Robert Rickling, property owner and past president of WPOA, and Brenda Frank, property owner of WPOA and Plaintiff in this pending lawsuit.

Excuse any errors, there was no time to review for grammatical and spelling mistakes.

## QUICK CONCLUSION

Plaintiffs prayerfully request Judge Rice to look deeply into all the materials on the record and that is available to him, and Plaintiffs believe he will see the truth, and grant our motion to recuse Judge Weber and, if it is in your power, sanction Yeager and Freeman.

Judge Rice, you must do the right thing, please.

Respectfully submitted,

John Sayyah, *pro se*  
238 Waynoka Drive  
Sardinia, OH 45171  
937-446-4136

Brenda Frank, *pro se*  
273 Yuma Drive  
Sardinia, OH 45171  
937-446-4136

### CERTIFICATION OF SERVICE

We hereby certify that a copy of the foregoing was served by U.S. Mail on this 13th day of Movember, 2003 to Herbert Freeman, Attorney at Law, 114 East Eight Street, Cincinnati, OH, 45202, Stephen Yeager, Attorney at Law, One West Fourth Street, Suite 1800, Cincinnati, OH 45202, Michael P. Foley, Esq., 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, OH 45202, Colleen Blandford, Attorney at Law, 1400Carew Tower, 441 Vince Street, Cincinnati, OH 45202, and Thomas Shore, Jr., Attorney at Law, Rendigs, Fry, Kiely & Dennis, LLP, 900 Fourth and Vine Tower, Five West Fourth Street, Cincinnati, OH 45202.

John Sayyah, *pro se*

Brenda Frank, *pro se*

I, Robert F. Rickling, do make the following statements, raising serious questions.

**<u>*I, at no time, ever retained Herbert Freeman, an attorney at law, to represent me.*</u>**

In Case No.: C-1-01-459, Freeman made a false statement to this Court that he was "Counsel of Record" representing me, as well as thirty other defendants. In his answer to the above numbered complaint, he stated: "Under Rule 4(M), Federal Rules of Civil Procedures, plaintiffs were required to serve defendants with copies of their complaint within 120 days of the filing date of July 11th of 2001. This has not been accomplished."

If the complaint had been filed 07/11/01, but never served, how could Freeman claim to represent me and thirty other defendants, and go and answer the complaint on 11/08/01, without my or anyone else's knowledge or consent?

I, as well as any other of the thirty defendants, as far as I know, never received *the* complaint filed 07/11/01, but never served.

However, on 11/<u>*14*</u>/01, I did receive an "Amended" complaint filed 11/01/01.

How could Freeman lawfully answer on 11/08/01 an amended complaint that I and the others **only** received on the 11/<u>*14*</u>/01, some 6 days after he filed his answer.

Why didn't Judge Hogan immediately do something about it when Sayyah and Frank filed a motion to sanction him for his misrepresentation???? It's recorded in the docket. Yet nothing was ever done about it. How come? Did Judge Hogan simply cover it up?

Something stinks!

The Court Docket clearly shows the question of Freeman's unlawful and fraudulent misrepresentation were raised by Sayyah and Frank in numerous motions to Judge Hogan and this Court. I am not an attorney, but it seems to me that Freeman should have been severely sanctioned, possibly suspended, or worse.

According to the Court Docket, those motions were ignored, never acknowledged or addressed by Judge Hogan or Judge Weber. Why not? There are 2800 property owners at Lake Waynoka, and many are concerned how justice is being served. I and many others in our community see this as corruption on the part of our federal legal system.

Why didn't Judge Hogan or Judge Weber respond to such serious accusations?

I no longer trust the legal system or this Court to see justice done.

*[signature: Robert Rickling]*
Robert Rickling, dated 11/10/03

## STATEMENT OF BRENDA FRANK

I, Brenda Frank, do hereby state that to the best of my knowledge, the following in regard this case are true and worthy of belief:

First, I would like to relate conversations at my bankruptcy hearing.

In reviewing this pending case for possible assets, the Trustee, Mr. Bavely, was puzzled and wanted to know from me why so many motions were not being addressed by the court in a timely fashion. I explained to Mr. Bavely and my attorney, Harold Jarnicki, who was also present, that I was also concerned about how many motions were not being addressed. When asked by Mr. Bavely how both attorneys, Mr. Freeman and Mr. Yeager were allowed to lie and make false statements, without any noticeable concerns or fear of sanctions.

What startled Mr. Bavely and Mr. Jarnicki was the serious and numerous motions filed concerning lies and fraudulent statements and the court never addressing them or responding. In fact, they became more perturbed when I told them that Judge Hogan had characterized our motions as "ridiculous."

I told them that Mr. Freeman had interfered and misrepresented himself in the Civil RICO Complaint that Sayyah and I filed on July 11, 2001 but had never served. Puzzled, they asked me why that Complaint wasn't served. I said that we had realized after filing and while still at the Federal Clerk's office that we had not numbered the paragraphs. When the Clerk was asked how much time had we to amend the already filed Complaint, she replied we had 120 days to file an amended complaint. I explained this meant that prior to 11/08/01 no one knew about the Complaint filed 07/11/01 because no one had been served. I told them that Mr. Sayyah and I had finally filed the amended complaint on 11/01/01, and by time we had made copies and assembled 42 plus copies of a 150 page complaint, we were not able to mail them out until 11/07/01.

But what really got their attention was Doc. #6 that showed that the first "return of service" was executed on defendant Randy Pike, which was dated 11/09/01. Even more gripping was that the Court Doc. #5 revealed the startling news that Mr. Freeman had filed an answer to that Complaint on 11/08/01

How could Mr. Freeman have been retained prior to 11/08/01, the day he filed his Motion to Dismiss our Complaint on behalf of Mr. Pike when Mr. Pike had received his summons on the 11/09/01, a day after Mr. Freeman filed Mr. Pike's answer. How is that possible? It isn't. The glaring truth is that Mr. Pike never received his summons prior to 11/08/01, which means that Mr. Freeman could never have been approached or retained by him. Therefore, simple logic, he lied to the court by stating that he was the Attorney of Record for Mr. Pike. To make matters worse, it was not until 11/14/01 that all the other 31 defendants he claimed to represent in his answer of 11/08/01 received their summons, some 6 days after Mr. Freeman answered for them.

The simple truth is that Freeman's answer of 11/08/01 was bogus.

It is an unquestionable fact that the Court Doc. #5 clearly and conclusively shows that Mr. Freeman filed a response on 11/08/01 on behalf of 32 defendants

in which Mr. Freeman claimed to be their attorney of record was false and unlawful. Especially when one considers that Mr. Pike was given his summons on 11/09/01, one day after Mr. Freeman replied to the Complaint, claiming that Mr. Pike had retained him to represent him. Even more compelling, it was not until 11/14/01 that 31 of the 32 defendants received their summons, which means those 31 defendants received their summons some 6 days after Mr. Freeman claimed he was their attorney of record. The only conclusion one can reach is that Mr. Freeman could not have been approached and retained by any of the 32 defendants, no way no how. Mr. Freeman just plain lied, fraudulently represented himself as the attorney of record to the court.

Mr. Bavely, Mr. Jarnicki, and all the attorneys at that hearing were shocked by what I was saying in that hearing. No wonder, they had over a period of time heard that filed motions after motions pertaining to lies and fabrications but yet the court did nothing, absolutely and completely nothing.

Besides Mr. Bavely and Mr. Jarnicki, there were other attorneys present at the hearing sitting alongside their clients waiting their turn. Almost to a person, those attorneys murmured their shock and disbelief at what I was saying. It was apparent that they were dumbfounded at the behavior of Mr. Freeman, but, even more, that federal judges would condone such behavior.

The above is true and accurate,

Brenda Frank, dated November 7, 2003