# IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| John Sayya, *pro se*, et al., | ) Case No.: 01-CV-459 |
| Plaintiffs, | ) Senior District Judge Herman J. Weber |
| v. | ) |
| | ) MOTION FOR LEAVE OF COURT TO |
| Waynoka Property Owners | ) REPLY TO DEFENDANT FREEMAN'S |
| | ) MEMORANDUM IN OPPOSITION |
| Association, Inc., et al., | ) |
| Defendants. | ) |

**NOW COME** Plaintiffs, and move this Court for leave to reply to Defendant Freeman's ("Freeman") memorandum in opposition. The reasons in support of such motions are more particularly set forth in the accompanying memorandum.

## MEMORANDUM

Plaintiffs have filed motion after motion after motion, and on and on: the lies, the false claims, the distortion, the misleading statements, the maliciousness, the repetitive demeaning insults, without this Court ever once responding with a ruling. Plaintiffs are just plain damn weary and tired of being subjected to Freeman's lying, unethical, dilatory litigation tactics, in which it appears his sole purpose is to burden Plaintiffs by forcing them to respond to claims that are frivolous on their merits, as well as harassing, or otherwise "unreasonable and vexatious." *United States v. Ross*, 535 F.2d 346 (6th Cir. 1976); see, also, *Lipsig v. National Student Mktg. Corp.*, 214 U.S. App. D.C. 1, 663 F.2d 178 (D.C. Cir. 1980).

### Vexatious Verbiage

Here, once again, as if nothing better to do, Plaintiffs must take time out of their lives to respond to another of Freeman's predictable vexatious verbiage to which Plaintiffs, since the day they filed this pending cause of action, have been continuously subjected. But, patiently, never giving up, never, Plaintiffs once again give a yeomen's try, in their following reply, to persuade this entrenched intractable Court that Freeman has *justly* earned his right to be sanctioned.

### Defamation

On page 2, para. 2: "Plaintiffs are vexatious litigators and serial abusers of process, allegations which have been well documented in the responsive pleadings of various defendants." That is false, defamatory, without proper basis on the record.

### Vexatious Litigator Cause of Action

For Freeman to label Plaintiffs *vexatious litigators,* it is not enough for him to allege it in a counterclaim, he is required, pursuant to Ohio Revised Code 2323.52, to proceed to litigation under the Rules of Civil Procedures, and if needs be, through all applicable appeals, before he can make such a claim. This has not been done, and, this Court show no willingness to impose sanctions on Freeman's unacceptable, defamatory, and libelous conduct, especially when intended to harass and malign, something is wrong, terribly wrong. This Court has the authority to impose sanctions under 28 U.S.C. § 1927 "in instances of a serious and studied disregard for the orderly processes of justice." *West Virginia v. Charles Pfizer & Co.*, 440 F.2d 1079 (2nd Cir.), cert. Denied, 404 U.S. 871, 29 S.Ct. 81, 30 L.Ed.2d 115 (1971); also, *Kiefel v. Las Vegas Hacienda, Inc.,* 404 F.2d 1163, 12 A.L.R. Fed. (7th Cir. 1968) cert. Denied, 395 U.S. 908, 89 S.Ct. 1750, 23 L.Ed.2d 221 (1969),

### Laws and Vexatious Conduct

28 U.S.C. § 1927 provides: Any attorney…in any court of the United States…who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred

because of such conduct." While 28 U.S.C. § 1927 specifically relates to vexatious conduct as opposed to vexatious pleadings, Freeman's conduct occurred when he made vexatious remarks at the hearing before Judge Weber, which were false, malicious, and intentionally deceiving.

Fed. R. Civ. P. 11 imposes three obligations on the signing attorney. First, the attorney must conduct a reasonable inquiry to determine the document is well grounded in fact. Second, the attorney must conduct a reasonable inquiry to determine that the positions taken are warranted by existing law or as a good faith arguments for extension or modification of existing law. Third, the document must not be filed for any improper purpose. *Jackson v. Law Firm of O'Hara, Ruberg, Osborne and Taylor*, 875 F.2d 1224, 1229 (6th Cir. 1989); *see, also, Mann v. G & G Mfg., Inc.*, 900 F.2d 953, 958 (6th Cir.) (citation omitted), cert. denied, 498 U.S. 959 (1990).

If an attorney violates one of these obligations, a court must impose sanctions. *Jackson*, 875 F.2d at 1229; *see, also, INVST Financial Group, Inc. v. Chem-Nuclear Systems, Inc.*, 815 F.2d 391, 401 (6th Cir.), cert. denied, 484 U.S. 927, 98 L. Ed. 2d 251, 108 S. Ct. 291 (1987)). "An attorney's good faith is not a defense." Id. Further, the imposition of sanctions are appropriate when a party files frivolous pleadings "interposed...to harass, or to cause delay or needlessly increase the cost of litigation." e, e.g., *Morgan v. Union Metal Mfg.*, F.2d, No. 83-3653 (6th Cir. Mar. 26, 1985); *Tohline v. Central Trust Co.*, 549 N.E.2d 1223, 1228 (Ohio Ct. App. 1988); *Hahn v. Kotten*, 331 N.E.2d 713, 718 (Ohio 1975); *Matalka v. Lagemann*, 486 N.E.2d 1220, 1222 (Ohio Ct. App. 1985).

28 U.S.C. § 1927 gives a court the discretionary authority to sanction an attorney who, over a protracted period of time, files documents in bad faith, wantonly, maliciously, vexatiously, for oppressive reasons, and that "the claims [he] advanced were meritless, that he knew or should have known this, and that the motive...was for an improper purpose such as harassment." *Big Yank Corp. v. Liberty Mut. Fire Ins. Co.*, 125 F.3d 308, 313 (6th Cir. 1997) (quoting *Alyeska Pipeline Serv. Co. v. Wilderness Soc'y*, 421 U.S. 240, 247 (1975); *see, also, Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F2d. 1370, 1375 (6th Cir. 1987).

<u>No Sanctions *Why Not*?</u>

The question is why, like all the other disturbing documents that went begging for answers, were the following two excerpts from filed documents that were part of the court record not fully addressed in the so-called "thorough *de novo* review"? **(Doc. #116)**. Was it simply oversight, or something more disturbing? Putting that aside, and more to the point, the following excerpts taken from two notarized affidavits expose the frauds and lies of Freeman that somehow got lost or misplaced in the so-called "**thorough *de novo* review** of this Court's file…" **(Doc. #112)** (Emphasis added). Come, take a read:

- Affidavit of Shirley Hempfing filed in this Court, talking about Freeman fraudulently filing an answer on her behalf <u>*without her knowledge or consent:*</u>

    "I have never had any communication, either verbal or in writing requesting Herbert E. Freeman to act as my attorney in this matter." *See attached exhibit 1.*

- Affidavit of Robert Rickling filed in this Court, talking about Freeman fraudulently filing an answer on his behalf <u>*without his knowledge or consent:*</u>

    "I, at no time, ever retained Herbert E. Freeman, an attorney at law, to represent me. In Case No.: C-1-01-459, Freeman made a *false statement* to this Court that he was 'Counsel of Record' representing me, as well as twenty other defendants. In his answer to the above numbered complaint, he stated: Under Rule 4(M), Federal Rules of Civil Procedures, plaintiffs were required to serve defendants with copies of their complaint within 120 days of filing date July 11th of 2001. This has not been accomplished.

    If the complaint had been filed 07/11/01, but never served, how could Freeman claim to represent me and twenty other defendants, and go and answer the complaint on 11/08/01, without my or anyone else's knowledge or consent?

    I, as well as any other twenty defendants, as far as I know, never received *the* complaint filed 07/11/01 but never served.

    However, on 11/<u>14</u>/01, I did receive an "Amended" complaint filed 11/01/01.

    How could Freeman lawfully answer on 11/08/01 an amended complaint that I and the others **only** received on the 11/<u>14</u>/01, some 6 days after he filed his answer.

    Why didn't Judge Hogan immediately do something about it when Sayyah and Frank filed a motion to sanction him for his misrepresentation???? It's recorded in

the docket. Yet nothing was ever done about it. How come? Did Judge Hogan simply cover it up?

Something stinks!

The Court Docket clearly shows the question of Freeman's unlawful and fraudulent misrepresentation were raised by Sayyah and Frank in numerous motions to Judge Hogan and this Court. I am not an attorney, but it seems to me that Freeman should have been severely sanctioned, possibly suspended, or worse.

According to the Court Docket, those motions were ignored, never acknowledged or addressed by Judge Hogan or Judge Weber. Why not? There are over 2800 property owners at Lake Waynoka, and many are concerned how justice is being served. I and many others in our community see this as corruption on the part of our federal legal system.

Why didn't Judge Hogan or Judge Weber respond to such serious accusations?

I no longer trust the legal system or this Court to see justice done." *See attached exhibit 2.* (Emphasis added).

In light of the above, for this Court to say: "since there is no showing of any extrajudicial bias...[this court] overrules the Plaintiffs' Motion for an Order of this Court recusing Judge Weber,..." is nuts, and makes a mockery of Truth and "Justice for All."

Statements Never Addressed

**Doc. #5:** Freeman lied and fraudulently stated to this Court that he was "Counsel of Record," and that he was representing "defendants ten (10) through thirty one (31)."

The Tell-Tale-Dateline: Watch the Bouncing Ball

**Weber's 09/19/02 Order:** On page 3, Weber clearly states: "Plaintiffs instituted this action on **07/11/01**..." True, Plaintiffs did file on **07/11/01** (See Doc. #1), but they never served *that* Complaint on any of the defendants. Rather they took the allowed 120 days to amend, at the end of which time, then, *and only then*, did they file the **AMENDED COMPLAINT** on **11/01/01** (See Doc. # 4), which was a Thursday. Then taking Friday (**11/02/01**) to have copies made at Office Max, it took Saturday (**11/03/01**), Sunday (**11/04/03**), and Monday (**11/05/01**) to laboriously put together and staple each of a 150 page *amended* Complaint then address them, it

was not until Tuesday, **11/06/01**, that Plaintiffs were finally able to mail them out to each of the 42 defendants.

<u>Devilish Little Details</u>

The first defendant to receive his ***amended*** complaint was Randy Pike, and he received it on **11/07/01** (See Doc. #6), and each of the 21 remaining defendants received theirs over an extended period of time: on **11/08/01** (See Doc. #8), **11/09/01** (See Doc. #8), **11/10/01** (See Doc. #8), **11/13/01** (See Doc. #9), **11/14/01** (See Doc. #9), and **12/06/01** (See Doc. #22). But, yet, acting as "the attorney of record" on behalf of all 22 defendants, which included Nancy Klein, the last defendant to receive her Complaint on **12/06/01**, *Freeman **made a motion** on **11/08/01*** to dismiss and for sanctions (See Doc. #5). How can that be? How was that possible? How could Freeman make a motion on **11/08/01** when Randy Pike received his complaint one day before? No way, there was not enough time. More startling, how is it possible for Freeman to represent not only Randy Pike but also all the other defendants who received their complaints over a span of time, between **11/08/01** up until the time that Nancee Klein received hers on **12/06/01**? *Nancy Klein on **12/06/01***? How in the world did Freeman manage to represent her in his motion of **11/08/01** when she received her complaint on **12/06/01**? ***Get this***: **Nancee Klein got her summons one month after Freeman filed a motion on her behalf**. In other words, Freenan filed an answer on behalf of Nancee Klein, one month before she ever got her summons. ***Remember***, Freeman had put his signature on a piece of paper on **11/08/01** asserting to this Court that he was Nancee Klein's "Attorney of Record" on **11/08/01.** But how could he represent Nancy Klein on **11/08/01** when she did not receive her mailed Complaint until **12/06/01**? To make matters worse, the other 21 defendants also had never received their summons prior to **11/08/01.** Without receiving, how can they have been aware? Without their awareness, how can they have knowledge? Without their knowledge, how can they give consent? Without their consent, how can Freeman lawfully to represent them?

## **WHY NO DISQUALIFICATION**

In 1994, the U.S. Supreme Court held that "disqualification is required if an objective observer would entertain reasonable question about the judge's impartiality. If a judge's attitude or state of mind leads a detached observer to conclude that a fair and impartial hearing is unlikely, the judge must be disqualified." *Litekey v. U.S.*, 114 S.Ct. 1147, 1162 (1994).

"Positive proof of the partiality of a judge is not a requirement, only the appearance of partiality" *Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 108 S.Ct. 2194 (1988),

"What matters is not the reality of bias or prejudice but its appearance." *United States v. Balistrieri*, 779 F.2d 1191 (7th Cir. 1985).

The Seventh Circuit also stated that Section 4555(a) "requires a judge to recuse himself in any proceeding in which his or her impartiality might reasonably be questioned." *Taylor v. O'Grady*, 888 F.2d 1189 (7th Cir. 1989).

In *Pfizer inc. v. Lord*, 456 F.2d 532 (8th Cir. 1972) the Court stated that "It is important that the litigants not only actually receive justice, but that he believes that he has received justice."

The U.S. Supreme Court has ruled and has reaffirmed the principle that "justice must satisfy the appearance of justice", *Levine v. United States*, 362 U.S. 610, 80 S.Ct. 1038 (1960), *citing Offutt v. United States*, 348 U.S. 11, 14, 75 S.Ct. 11, 13 (1954)

"Recusal under Section 455 is self-executing; a party need not file affidavits in support of recusal and the judge is obligated to recuse himself *sua sponte* under the stated circumstances." Further, "the judge has a legal duty to disqualify himself even if there is no motion asking for his disqualification." *Taylor*, at 1189.

The Seventh Circuit opined: "We think that this language [455(a)] imposes a duty on the judge to act *sua sponte* even if no motion of affidavit is filed." *Balistriieri*, at 1202.

## **DISQUALIFICATION**

Disqualification is governed by 28 U.S.C. § 455, which provides, in part:

> (a) Any justice, judge, or magistrate of the United States shall disqualify himself in any proceeding in which his impartiality might reasonably be questioned.

>   (b) He shall disqualify himself in the following circumstances:
>
>>   (1) Where he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceedings....

Title 28 of the United States Code, section 455(a), requires a federal judge to "disqualify himself in any proceeding in which his impartiality might reasonably be questioned." The Supreme Court has held that this "catchall" recusal provision, covering both "interest or relationship" and "bias or prejudice grounds," requires all of these factors "to be evaluated on an objective basis." *Litekey v. United States,* 510 U.S. 540, 548 (1994); *see, also, United States v. Bayless,* 201 F.3d 116, 126 (2nd Cir.) ("Notably, under § 455(a), recusal is not limited to cases of actual bias; rather the statute requires that a judge recuse himself whenever an objective, informed observer could reasonably question the judge's impartiality, regardless of whether he is actually partial or biased."), cert. Denied, 529 U.S. 1061 (2000).

In *Hewlett-Packard Co. v. Bausch & Lomb, Inc.,* 882 F.2d 1556 (Fed. Cir. 1989), the Court explained the standard for disqualification under 28 U.S.C. § 455, as follows: In enacting section 455(a) Congress created an objective standard under which disqualification of a judge is required when a reasonable person, knowing *all* the facts, would question the judge's partiality. Although that standard is relatively vague and flexible, the Supreme Court has provided a starting point for applying it: "it is critically important...to identify the facts that might reasonably cause an objective observer to question [the judge's] impartiality." *Liljebert v.* [*Health Services Acquisition Corp.,* 486 U.S. 847, 865 (1988).] *Id,* at 1568. Ascertaining whether a judge's impartiality might be questioned is whether the charge of lack of impartiality is grounded on facts that would create a reasonable doubt, "not in the mind of the judge, or even necessarily that of the litigant, but rather in the mind of the reasonable person." *United States v. Cowden,* 545 F.2d 257, 265 (1st Cir. 1976), cert. Denied, 430 U.S. 909 (1977).

Plaintiffs assert the use of "might reasonably be questioned" in § 455(a) clearly implies that it would be preferable for a judge to err on the side of caution and recuse himself in a questionable case. "It must be remembered…that it is the judge who must come forth and recuse himself so as to avoid any appearance of impropriety." *Aetna Cas. And Sur. Co. v. Berry*, 669 S.2d 56, 74-75 (Miss. 1996); *see, also, State v. Salazar*, 182 Ariz. 604, 898 P.2d 982 (App. 1995) (citing *Wash. Jud. Ethics Comm. Advisory* Op. 89-13); *Atkinson Dredging Co. v. Henning*, 631 So.2d 1129 (Fla. App. 4th Dist. 1994); *Marcotte v. Gloeckner*, 6779 So.2d1225 (Fla. App.1996).

This Court has among its most important responsibilities maintaining the integrity of the judicial system and public confidence in its vigilance and willingness to expose and sanction dishonest attorneys, including *pro se* litigants, and hold them responsible for their misconduct and/or misfeasance that defame the entire legal profession on a daily basis by engaging in reprehensible and egregious behavior. Based on the facts asserted herein, one would be forced to agree that it would be very difficult, if not impossible, for a reasonable person to conclude that Weber is not biased against Plaintiffs and favorably inclined towards Freeman.

Furthermore, it would be totally preposterous for any reasonably fair and intelligent person to even suggest in passing that Weber has not violated just about all of Plaintiffs' constitutional rights in his obvious zeal to avoid sanctioning and reprimanding Freeman. Although some in the legal community as well, sad to say, as in this very Court find it distasteful to expose to the public that bias and dishonesty exists among judges and attorneys, albeit many if not most judges and attorneys are fair-minded, incorruptible, and fully trustworthy, *thank God*. It would seem to Plaintiffs that patently, any honest and sincere jurist or attorney would be happy, even delirious to have such miscreants exposed for their dishonesty and wrongdoings.

## CONCLUSION

Plaintiffs pray this Court to reconsider their motion to recuse, nothing less would be a "sham" and, at the very least, after all the struggle, Plaintiffs are entitled to a little bit of impartiality.

Respectfully submitted,

_[signature]_
John Sayyah, *pro se*
238 Waynoka Drive
Sardinia, OH 45171
937-446-4136

_[signature]_
Brenda Frank, *pro se*
273 Yuma Drive
Sardinia, OH 45171
937-446-4136

## CERTIFICATION OF SERVICE

We hereby certify that a copy of the foregoing was served by U.S. Mail on this 5th day of January, 2004 to Herbert Freeman, Attorney at Law, 114 East Eight Street, Cincinnati, OH, 45202, Stephen Yeager, Attorney at Law, One West Fourth Street, Suite 1800, Cincinnati, OH 45202, Michael P. Foley, Esq., 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, OH 45202, Colleen Blandford, Attorney at Law, 1400 Carew Tower, 441 Vince Street, Cincinnati, OH 45202, and Thomas Shore, Jr., Attorney at Law, Rendigs, Fry, Kiely & Dennis, LLP, 900 Fourth and Vine Tower, Five West Fourth Street, Cincinnati, OH 45202.

_[signature]_
John Sayyah, *pro se*

_[signature]_
Brenda Frank, *pro se*

-10-

United States District Court  11/29/01
324 Potter Stewart Court House
100 East Fifth Street
Cincinnati, Ohio 45202

Attn: Kenneth J. Murphy, Clerk

To Whom It May Concern:

Ref: Case Number C-1-01-459

This is to notify the Court that I will represent myself in the above referenced case number.

I have never had any communication, either verbal or in writing requesting Herbert E. Freeman to act as my attorney in this matter.

I have done nothing improper or illegal during my term as Trustee for WPOA from April, 1997 thru April, 2000.

*Shirley Hempfling*
Shirley Hempfling
5757 Cheviot Road 3B Unit
Cincinnati, Ohio 45247

Signed before me this 30 day of Nov. 2001
*Denise Schmidt*
DENISE M. SCHMIDT
Notary Public, State of Ohio
My Commission Expires Aug 15, 200_

Copies to:
John Sayyah
238 Waynoka Drive
Sardinia, Oh. 45171

Brenda Frank
273 Yuma Drive
Sardinia, Oh. 45171

I, Robert F. Rickling, do make the following statements, raising serious questions.

**_I, at no time, ever retained Herbert Freeman, an attorney at law, to represent me._**

In Case No.: C-1-01-459, Freeman made a false statement to this Court that he was "Counsel of Record" representing me, as well as thirty other defendants. In his answer to the above numbered complaint, he stated: "Under Rule 4(M), Federal Rules of Civil Procedures, plaintiffs were required to serve defendants with copies of their complaint within 120 days of the filing date of July 11th of 2001. This has not been accomplished."

If the complaint had been filed 07/11/01, but never served, how could Freeman claim to represent me and thirty other defendants, and go and answer the complaint on 11/08/01, without my or anyone else's knowledge or consent?

I, as well as any other of the thirty defendants, as far as I know, never received *the* complaint filed 07/11/01, but never served.

However, on 11/_14_/01, I did receive an "Amended" complaint filed 11/01/01.

How could Freeman lawfully answer on 11/08/01 an amended complaint that I and the others **only** received on the 11/_14_/01, some 6 days after he filed his answer.

Why didn't Judge Hogan immediately do something about it when Sayyah and Frank filed a motion to sanction him for his misrepresentation???? It's recorded in the docket. Yet nothing was ever done about it. How come? Did Judge Hogan simply cover it up?

Something stinks!

The Court Docket clearly shows the question of Freeman's unlawful and fraudulent misrepresentation were raised by Sayyah and Frank in numerous motions to Judge Hogan and this Court. I am not an attorney, but it seems to me that Freeman should have been severely sanctioned, possibly suspended, or worse.

According to the Court Docket, those motions were ignored, never acknowledged or addressed by Judge Hogan or Judge Weber. Why not? There are 2800 property owners at Lake Waynoka, and many are concerned how justice is being served. I and many others in our community see this as corruption on the part of our federal legal system.

Why didn't Judge Hogan or Judge Weber respond to such serious accusations?

I no longer trust the legal system or this Court to see justice done.

*[signature: Robert Rickling]*
Robert Rickling, dated 11/10/03