(0)

Melvin Bledsoe
117 Greenwood Way
Barboursville, Wva.  25504
Fax  and  Hone Ph.  No.  1 304 736 9572


Dear any _____ employees
at the office of Lake Waynoka,


On this day 20th of April,2003, I , Melvin Bledsoe received a threatened from Timothy O'Farrell that if  a total payment of dues was not paid by  the first of Jume-that the matter would be turned over to a collection agency.      For thirty years you have collected dues from me under false pretense  that  I  had a valid contract  for certain rights and due amounts.     As I  have discovered lately that all rights have been taken away,  including the right  to use the free lake, the right to use the free pool with my children,  the right to use the free roads, the right  to build on my property under my contract and the right to ask for a water tap (when I requested) and the right to speak a Board meetings, etc.    All this cor_____ n, with l s , f____ and a scheme to e___ money from me and others land  holders have destroyed the value of all property at Lake  Waynoka, Futhermore,  the  news letter of Dec. 8/02 that was sent out to all property owners  contained false and slanderous statements about me. The death  threats were made by _____ . Chaney. A_ it  has  turned out , there is nothing at Lake Waynoka for me and my family,  Rather than you cr___ resolving the matter, you are now making threats.   I will pay my taxs on my property  so  you can file what ever you want and then I will counter sue and have a jury  in another county. So make my day.   T won a major suit in Federal Court at Huntington,Wva., (pro se) lately.   There are still two suits pending against all of you.   I have good help and  information from  a number of people  at the Lake, So have a good day.


_____
Melvin Bledsoe

To WPOA, from Melvin Bledsoe 4/20/2003 . Time 9:00 am.  Fax 1 304 736 9572

1  937  446  3253  WPOA  Fax

# Please take notice to all Lake Waynoka property owners

It is very important that you join me in signing a petition to remove all members from , the Board of trustees , both WPOA and WRWSD.   These two Boards of trustees members have conspired  with the manager to violate the Restrictive Covenant and the code o f regulations., for the purpose to devalue your prroperty and they have  secretly impose large amounts of dues and  other fees.

They have changed the restriction for building ,forcing you to build a larger house and forcing you to build a garage, forcing you to spend lots of money to have your  lot resurveyed when your  original markers are still there, They  raised the water tap  fee to $ 1250.00 and forcing  you to pay that amount  up front whether you want the water or not.    They have secretly added a line In the permit  section of the code o f regulation  forcing you to pay a $500.00  building permit fee and then tried to cover the  matter up.  No one else paid such a fee prior to 1995 .  They  claimed that they needed to install water meters to check for leaks but that was a scheme to raise your water rates.  They falsely claim that you have to disconnect   your working  sewer system and connect to their line when it  becomes  available , but the Health Department says no..  They are charging you  twice  the amount for what it cost to install a grinder pump.     These criminal  acts have made  it impossible  for low income property owners to build.  This  has destroyed the value of your property.  The reasons that the Boards Members have  done  these  wrongs  to you and me- is to keep low income people and all the fine Black  Americans  from building at Lake Waynoka    Blacks and  this property owner Melvin Bledsoe have  been denied the right to speak at Board meetings .   My life has been threatened by a now WRWSD board member .,(Chaney). On  that same day I was threatened by a man named Andrew along with his wife Nancy who caused the threat .   They use the news letter to send out  hate  mail against anyone who doesn't agree with them   -Referring  to them as equal to terrorist who spread antrax and fly planes into buildings , in  addition to all the above, all the campers in the storage area, , including mine have been destroyed or  damaged .  You are no longer free to use the lake-You are no longer free for your children to use the pool.  The dues that you pay  are  collected under false pretense.. As of now your lot  that you paid  $ 4000.00 or so is now worth $300.oo,  (Three hundred if you get that price. changed the rules  and you can  no longer build an A frame house.

There   must be  three hundred of you the members to sign  a petition to remove these Board Members from office..  We must try to   restore  and preserve our   Restrictive Covenant so we all can enjoy the out doors and be treated as equal.. If you believe in the American way, Take time and name all  the  Board members and  demand  their removal from office.        You also must remove Timothy O'Farrell  as manager .   He is  mostly the problem... He is acting like a Dictator.   What you and I had at the Lake is gone. The Board members and the managers are Racist.

Attached is  the names of all the Board Members  and the managers name. Fill out  paper and send your paper  to me to the address below and I will take care of all the rest. Please call me if  you want to know more. You   have been had by a group of  evil people.    About two years ago, I was   promised by Tim O'Farrell  Manager)   that he would honor my recorded contract, but later he denied making such an agreement.  That thing lied to me .  On his promise, I bought about $ 8,000.00 worth of material to build, He said my water tap would be $105.00  as per contract, so when I went to pay that amount, He said  "no", You must pay $1250.00 and you must pay now or no building permit will be  issued.  Note.  On all the papers and  contract . There it states.  "When the property  owners make  a request for a water tap in writing and  pay $195.oo , then they get a water tap. This was a scheme to  defraud  and extort money and discinatory.  Property owners buying lots prior to 1996 was  GRANDFATHERED..    Tim O'Farrell  said the  $500.00  that was demanded  was  a damage deposit on the roads and returnable .  Jim Mark  said no returne.Joan  Conners made both  of  them out to be liers. She said it was a building permit fee, but there is no building permit fees prior to 1996 and this is GRAMDFATHERED..  This is fraud and extortion. The Federal judge  in  Cincinnati says  "Extortion is a felony and  You  can be fined  and  sent to prison for 20 years.  Tim O'Farrell has written   Melvin Bledsoe two threatened letters, now he says he f eels bad about all these hard  feelings  but he is not man enough to correct the matter.  He will not  let me  build , So my material lies in my back being damaged.  He calls  Lake Waynoka a fine place.  He speaks with a forked tonge..  Get rid of Liz Freeman, Joan Conners, Betty Pruden, Jim Mark, Tim O;Farrell, Please hurry-Time is running out.  Never pet a wounded tiger

Call Melvin Bledsoe,  or fax to 1 304 736  9572  for more information or write to the address below.

1 17 Greenwood Way ,Barboursville, West Virginia,  25504

Law Offices

# Herbert E. Freeman

TELEPHONE (513) 381-8115
FACSIMILE (513) 381-8158
CELLULAR (513) 505-5062

114 East Eighth Street
Cincinnati, Ohio 45202-2102

June 18, 2004

John Sayyah
238 Waynoka Drive
Sardinia, Ohio  45171

RE:  Sayyah & Frank -vs- W.P.O.A.

Dear Mr. Sayyah:

The magistrate judge in our case has requested for all parties or their respective attorneys to set up a discovery conference under provisions of Fed.R.Civ.P. 26.  The pretrial questions must be worked out, and the written report of the parties must be returned no later than July 15th of 2004.  Please call me and indicate your intentions as to how best to comply with these rules. I am unaware of what counsel for other parties is doing in response to these matters, but it seems that perhaps a mutual meeting would be most efficient for both you & Ms. Frank.

Sincerely,

Herbert E. Freeman
Attorney at Law    HEF/ao



LAW OFFICES

# Herbert E. Freeman

TELEPHONE (513) 381-8115
FACSIMILE (513) 381-8158
CELLULAR (513) 505-5062

114 EAST EIGHTH STREET
CINCINNATI, OHIO 45202-2102

June 23, 2004

John Sayyah
238 Waynoka Drive
Sardinia, Ohio  45171

RE: <u>John Sayyah</u> & <u>Brenda Frank</u>

-vs-

<u>Waynoka P.O.A.</u>, <u>Et Al</u>

Dear Mr. Sayyah:

Notwithstanding the fact that you have filed a motion in the Sixth Circuit Court of Appeals on or about the 19th of June of this year containing content which is threatening, lawyers provided by Lake Waynoka's insurance carrier are still willing to give you one more chance to redeem yourself.  It is of the utmost importance that both yourself and Ms. Frank come into compliance with the mandates set up by Magistrate Judge Black.

I regret to inform you that should you continue on your present course both myself [pro se] and probably other parties through counsel will be forced to resort to more agressive tactics. Attached hereto is a photocopy of a subpoena in a civil case. You are an intelligent man, and therefore I am certain that you can "fill in the blanks" of this hypothetical document with the appropriate information.  We seek only a voluntary exchange of the same information, in a neutral location and under orderly procedures.  Govern yourself accordingly.

Sincerely,

Herbert E. Freeman  HEF/ao
Attorney at Law       -enclosure as outlined herein-

copies:  Ms. Brenda Frank, Matthew Donnelly, Esq., et al

AO88 (Rev. 1/94) Subpoena in a Civil Case

### Issued by the
# UNITED STATES DISTRICT COURT

SOUTHERN _____ DISTRICT OF _____ OHIO

John Sayyah & Brenda Frank

V.

Waynoka Property Owners Assn., et al

**SUBPOENA IN A CIVIL CASE**

Case Number:[1]   01-00459

TO:       John Sayyah
          238 Waynoka Drive
          Sardinia, Ohio  45171

☐ YOU ARE COMMANDED to appear in the United States District court at the place, date, and time specified below to testify in the above case.

| PLACE OF TESTIMONY | COURTROOM |
|---|---|
| –SAMPLE– | |
| | DATE AND TIME |

☐ YOU ARE COMMANDED to appear at the place, date, and time specified below to testify at the taking of a deposition in the above case.

| PLACE OF DEPOSITION | DATE AND TIME |
|---|---|
| –SAMPLE– | |

☐ YOU ARE COMMANDED to produce and permit inspection and copying of the following documents or objects at the place, date, and time specified below (list documents or objects):

–SAMPLE–

| PLACE | DATE AND TIME |
|---|---|
| –SAMPLE– | |

☐ YOU ARE COMMANDED to permit inspection of the following premises at the date and time specified below.

| PREMISES | DATE AND TIME |
|---|---|
| –SAMPLE– | |

Any organization not a party to this suit that is subpoenaed for the taking of a deposition shall designate one or more officers, directors, or managing agents, or other persons who consent to testify on its behalf, and may set forth, for each person designated, the matters on which the person will testify. Federal Rules of Civil Procedure, 30(b)(6).

| ISSUING OFFICER'S SIGNATURE AND TITLE (INDICATE IF ATTORNEY FOR PLAINTIFF OR DEFENDANT) | DATE |
|---|---|
| Herbert E. Freeman, _pro se_, Attorney at Law | 06-23-04 |

ISSUING OFFICER'S NAME, ADDRESS AND PHONE NUMBER

114 East 8th Street, Cincinnati, Ohio  45202-2102  (513) 381-8153

(See Rule 45, Federal Rules of Civil Procedure, Parts C & D on next page)

[1] If action is pending in district other than district of issuance, state district under case number.



## Enough is enough!
## Corruption must stop!

This is a call to hope and to action, a call to the hard work of organizing ourselves into a broad coalition of property owners sick and tired of the lies and deceits of our Board of Trustees and the lies and deceits of our General Manager.

More than that, this is a call to re-constitute ourselves into a smashing new force to end rule by the corrupt few.



## Become involved.
## It's your community.

# Brown County **needs** Sheriff Wenninger.



Truly dedicated peace officers, let's unite to support him, as well as Chief Deputy Dunn, and Captain Creighton...and all the other outstanding detectives and deputy sheriffs...





**"When men are corrupt, laws are broken"**—Disraeli 1874



*The rule of law...*

This state of conflict we're in  gets us right down to the serious issue of ethics and honesty—and therein lies the problem here at Lake Waynoka.

The question of ethics and honesty has become more and more a startling question as to what kind of community and people are we.

Make no mistake, what we at *Watch-Force, Inc.* are engaged in and fully committed to is serious business...

And that "serious business" has much to do about:

- **Ethics and honesty**

Lake Waynoka's Struggle between Right and Wrong

## SpeakOut! Publications

Two brand new newspapers will hit the newsstands, one for Lake Waynoka and one for Brown County.

- There will be no charge, no ads.

- Corruption will be reported.

- We are against the current use of the courts and the prosecutor's office by special interests.

- We fully support Sheriff Wenninger, his staff and his people.

- We will assert the privileges of the "Freedom of the Press."

- We encourage the holding of mass demonstrations, rallies, protest marches, picketing, and whatever other peaceful means lawfully available to the people.

- The people must *know*: this is their Courts, their prosecutor's Office, and their Sheriffs Dept.

We will devote our selves, our energies, and our recourses to the future welfare of Lake Waynoka, Brown County, and all the "Freedoms" guaranteed to all of its citizens.

**John Sayyah, Editor**

President of:

- WatchForce, Inc.

- SpeakOut! Publications

- Schools "R" US ... draisers, Inc.



PO Box 101
Georgetown, OH
45121

Our WEB Site is presently being designed and will be available for information and  downloads SOON.

WATCH-DOG, INC.    VOLUME 1 ISSUE 1





# LAKE WAYNOKA
# *F*REE *P*RESS

---

### A CALL FOR A *SPECIAL PROSECUTOR* TO LOOK INTO THE MASSIVE CORRUPTION AT LAKE WAYNOKA

**Crimes have been leveled at Tim O'Farrell, the Lake's Manager, involving criminal thefts and swindles, which have been *promptly* covered up by the Brown County Prosecutor. Cases brought against the Lake have been side tracked and stalled by corrupt judges in a corrupt Brown County Court System. If necessary a bus-load of property owners are prepared to go meet with the Governor to appoint a special prosecutor to look into the alleged massive corruption by Mr. O'Farrell and the Lake Waynoka's Board of Trustees.**

---

  *Enough is enough!*

*The property owners of Lake Waynoka are just plain sick and tired of the whole <u>damn</u> <u>rotten</u> <u>bunch</u>. The lies, deceits and deceptions of Tim O'Farrell and <u>his</u> kiss-up WPOA Board Members. The alleged thefts by Tim O'Farrell. The ploys and cover-ups by the board members....they are just plain sick and tired of it all...*



*Lake Waynoka Free Press* is committed to exposing the lies, deceits and deceptions of Tim O'Farrell and the WPOA Board. The cover-ups of fraud, waste, thefts-in-office, thefts-by-deception, theft-by-conversion, unlawful private use of our vehicles, stealing gasoline over the years, under-the-table kickbacks, the *<u>inside</u>* hanky-panky with our lots, and more, much more—please *see other side...*

---

## ETHICS & HONESTY



*John Saggah* - editor

The ethics and honesty of Tim O'Farrell and the WPOA Board of Trustees has become more and more a struggle as to what kind of community and people we are.

Make no mistake, this struggle *is* between right and wrong, good and evil. In that regard, we are <u>ALL</u> engaged in *THIS* "struggle."

This *FREE PRESS* is being made available for you, the property owners, to know the TRUTH of *WHAT* is <u>REALLY</u> going on in this community of <u>ours</u>. The staff, writers, and I commit ourselves to tell it like it is—*the good, the bad, and the ugly.*

We all share a common destiny; it's a question of how we get there.



Whether by majority rule or rule by the "elitist" few?



For the past five years, John Sayyah and Brenda Frank (and others) have looked very closely into the alleged thefts and wrong doings of O'Farrell with cover-ups by WPOA and WRWSD Boards. In following issues, we intend to fully and completely expose the following alleged wrongdoings:

- Theft-by-deception of a WPOA bush-hog by Tim O'Farrell.

- Obstruction and cover-up of the above by Tom Joyce, Betty Purdin and others.

- Theft-by-deception of Mrs. Byrd's camper and two pontoon boats involving Tim O'Farrell.

- A Civil RICO (acts of racketeering) complaint filed in Federal Court by John Sayyah and Brenda Frank, charging a variety of alleged crimes committed by O'Farrell and 31 other WPOA defendants, as well as WPOA Legal Counsel, Jay Cutrell, WPOA Accounting Firm, Kamphaus, and the Real Estate Firm, Fenders

- Defrauding of Federal grants and low cost loans.

- Mail Fraud.

- Games played by O'Farrell in an insider's scheme to gain control of lots.

- The personal use of our workers and equipment by O'Farrell.

- The use of our workers and equipment for friends of O'Farrell.

- The use of a WPOA credit card for personal use.

- The kickbacks and payoffs to O'Farrell.

- Making out false official statements and reports by O'Farrell.

- The deception and illegal forming of the WRWSD by O'Farrell and others.

- The unlawful gauging of fees and dues by the WPOA Board.

- The lies, perjury and hypocrisy of Tome Joyce.

- The lies, perjury and hypocrisy of O'Farrell

- The Con Job that a majority of the WPOA Board can raise fees and dues.

- The truth: WPOA Board can propose, but 2/3 of the members must approve.

- And more, much more.



**WE ARE CALLING FOR A SPECIAL PROSECUTOR TO EXPOSE THE CORRUPTION AT LAKE WAYNOKA**

Sayyah is to be held fully responsible for all articles appearing in this newspaper and will *personally* defend against each and every defamatory lawsuite

*Exhibit 15*

**This is the result of three months of exhaustive interviews and investigations conducted by a reporter from *The Ledger Independent*, Carla Redden...**

**GOT A NEWS TIP? C**
or 1-8

THE LEDGER INDEPENDENT

# EGION

**MARY AN**



**found**
**Lewis**

The body of
ce Tuesday
chers Friday
home in a
ea.
: rural portion
indered
Bill Lewis

# Accusations abound in Lake Waynoka laws

**By CARLA REDDEN**
*Staff Writer*

SARDINIA, Ohio – A civil lawsuit filed by two Lake Waynoka property owners is pending in federal court in Cincinnati.

Acting as their own attorney, John Sayyah and Brenda Frank filed a second amended Civil RICO complaint May 7 with a demand for damages to be compensated by a suggested $7.5 million.

An original complaint was filed in November 2001 by Sayyah and Frank who were later required by the court to expand upon allegations of racketeering within the Lake Waynoka associations.

The complaint lists 42 defendants which include Lake Waynoka employees, board of trustee members, real estate broker and agents, attorneys and police who allegedly participated directly or indirectly in a racketeering enterprise.

The 150-page amended complaint includes numerous supporting documents including WPOA, or Waynoka Property Owners Association code of regulations and restrictive covenants, financial statements and various memos, affidavits and letters to and from Waynoka officials to state officials.

At the heart of the plaintiffs' allegations is the statement that several Lake Waynoka officials helped WPOA General Manager Tim O'Farrell devise fraudulent schemes that violated WPOA restrictive covenants recorded on the

association's property de

The plaintiffs state WP(
on or about June 25, 197(
it organization and has ac
Feb. 19, 2003.

Waynoka Utilities Inc.
the early 1970s to supply
with water and during t
was able to pay its loan
ahead of schedule, accord
plaint.

**See LAWSU**

# AWSUIT

**om Page A3**

rom the beginning of Lake ynoka's existence, WPOA perty owners were forced to tall septic tanks for their lots. ut, according to the com-int, O'Farrell and certain JI board members began to culate fraudulent and mis-ding information around 6 concerning the threat of ie Waynoka being threatened pollution problems stemming m malfunctioning septic ks.

'Farrell and others allegedly l WPOA property owners y were in danger of losing the because of the danger of the io EPA condemning it due to a lution threat.

O'Farrell and others) kept up onstant drum beat that WPOA perty owners had better wake to the 'threat' of leaking mal-ctioning septic tanks and do iething about this serious pol-on problem, because time s running out and the property ners needed to get behind the nager's push to destroy all sting septic tanks and put in place a central sewage system insisted by the Ohio EPA or e having the lake condemned the Ohio EPA," the complaint es.

ayyah and Frank then allege, ough conversations with high-king Ohio EPA officials, they covered the Ohio EPA was vinced to authorize a central vage system based on the ormation from O'Farrell who d the Brown County Health partment was no longer issu-; permits to install on-site sep-systems and thus hampering ther growth at Lake Waynoka. he Waynoka Regional Water d Sewer District, for which Farrell also serves as general anager, was formed later with e help of government grants d loans.

'Plantiffs further allege that erything began to unravel hen, upon checking with the own County Health Depart-ent, they were told that was not ie, that the Brown County ealth Department had never, at ly time, said or implied that ey would not issue permits," e complaint reads.

Sayyah and Frank state the "water and sewer scam" provid-ed an opportunity for WPOA officials to extort money by unbridled increases in fees and dues. The alleged scam also facilitated the destruction of $1.5 million in septic tanks, each val-ued at nearly $5,000.

The plaintiffs allege O'Farrell, WPOA/ WRWSD legal counsel Jay Cutrell, the WPOA and WRWSD boards violated the restrictive covenants of the Lake Waynoka land by failing to hold open meetings and getting the approval of WPOA land owners to make certain decisions.

According to the complaint, water usage bills were increased without informing WPOA land owners beforehand or giving them a chance to vote on the increase.

The restrictive covenant, avail-able at the Brown County Recorders Office, was to remain in effect until Jan. 1, 2020.

The plaintiffs also outline a "real estate scam," alleging vio-lations of state and federal real estate practices by O'Farrell, WPOA Board of Trustees, Cutrell and real estate broker Donald E. Fender. The CPA office of Kamphus, Henning and Hood of Cincinnati also partici-pated in the alleged scam which illegally suppressed competition among other licensed realtors.

According to the complaint, Fender was allowed to enter into a "heavily loaded...'sweetheart deal'" with WPOA, a non-profit organization not permitted to use its assets to benefit a third party. Fender allegedly received bene-fits exceeding $5,000 per month for a lease sum of $450.

Sayyah and Frank said Cutrell was directly involved in the "conspiracy" and should have protected WPOA interests.

O'Farrell also allegedly re-ceived kickbacks from the sale of WPOA lots which were bought at one price, substituted at another price and fraudulently reported incorrectly on property sales receipts.

According to supporting docu-ments in the complaint, O'Far-rell perjured himself by declar-ing false sums of land sales.

Accountant Jerry Kamphus is accused in the complaint of issu-ing false and misleading finan-cial statements.

Sayyah, who said he has expe-ience in forming corporations nd is familiar with contract aws, said the document is the result of an investigation he has conducted during the last three and a half years.

"I've lived in several states and I know when things don't seem right," he said.

Sayyah said he was "tipped off" when the sewer system was being installed and some people he knew received $6,050 bills for the installation of their grinder pumps but he received no such bill.

He said he was told by those homeowners who received the bill they faced the threat of hav-ing their water service turned off if they didn't pay.

"There is no such thing as pref-erential treatment," he said.

Furthermore, he said WPOA property owners were never informed about the sewer project up front, either verbally or in writing, what they would have to pay individually.

He and Frank filed a number of civil suits in Brown County Common Pleas Court against WPOA officials more than a 18 months ago but a summary judg-ment has yet to be made.

In the civil suits filed, Sayyah claimed O'Farrell engaged in dishonesty, fraud, deceit and fraudulent misrepresentation; engaged in acts of theft by deception; induced and con-spired with others to obstruct justice; engaged in acts of duplicity; fraudulently misappro-priated WPOA funds; and used WPOA employees, equipment and other resources for personal and private needs.

Sayyah asked the court for a permanent injunction requesting O'Farrell's removal as manager and prohibiting him from remov-ing or destroying records and files from WPOA premises.

One of the suits filed lists all WPOA board of trustee mem-bers, O'Farrell and Cutrell as defendants. The complaint spe-cifically alleges breach of duty, intentional misconduct, bad faith, fraud, deceit and failure to exercise good judgment.

Similarly to the federal civil RICO suit, the suits filed in Brown County Common Pleas Court charge WPOA trustees violated the restrictive covenant which allows residents owner-ship of the water system for $5 a month with unlimited use. The board increased water bills $45 to $60 after the installation of the sewer system and water meters.

Cutrell said the allegations have no merit and Sayyah is "grandstanding."

"In my opinion, there is no sub-stance to his allegations," he said.

Cutrell and Kamphus are both being represented in the case by Rendigs Fry Kiely and Dennis of Cincinnati.

O'Farrell referred comment to Patsfall Yeager and Pfum law firm of Cincinnati. Calls to the firm from The Ledger Indepen-dent were not returned.



Tuesday, 07 October, 2003

## TO WPOA BOARD, BROWN COUNTY SHERIFF AND WHOM IT MAY CONCERN,

At the WPOA July Board meeting, the Board was asked to investgate Tim O'Farrell for buying three lots (Lot 1690,773 and 774) at Lake Waynoka. Liz Freeman as President of WPOA said, she would look into it. Two months have past and there has been no reply from WPOA Board. Things have gone to far. WPOA Board in trying to make things appear rosy here at the Lake has resorted to altering WPOA Board meeting minutes. Things are not rosy here at Lake Waynoka. The property owners are being force to pay for a $1.2 million bathhouse, gym, etc. without having a vote on building the structure or not building the structure. WPOA CODE OF COVENANT requires a vote to be taken.

There is a history of Tim procuring property for himself and relatives.

1) Charles Creed (Tim's father-in-law) bought Lot 1813 4 Dec.1995 $3,500.
   Charles sold Lot 1813 8 July 1999 for $13,500 a profit of $10,000.
2) Maureen Nespojohny (Tim's sister) bought Lot 774 @ 1 April 2001 for $5,000.
   Maureen sold Lot 774 to Tim on 16 Aug. 2003 for $10,000 a profit of $5,000.
3) Tim bought Lot 773 1 Aug. 2003 for $5,000.
4) Tim bought Lot 1690 16 June 2003 for $18,000.
   * BROWN COUNTY RECORDERS OFFICE

The problem is WPOA did extensive work on these lots:

1) Lot 1690 @ 200 feet of plastic drain tile was installed, trees cleared, lot graded, grass sown, etc. before Tim bought the lot. What was the cost to WPOA?
2) Lots 773 and 774 had @ 150 feet of drain tile installed between these lots, trees cleared, grass sown, etc. before Tim bought the lots. What was the cost to WPOA?

WPOA also lost income:

1) Lot 1813 bought 4 Dec. 1995. Were there any dues, fees or assessments forgiven?
2) Lot 1690 bought 16 June 2003. Were there any dues, fees or assessments forgiven?
3) Lot 773 bought 1 Aug. 2003. Were there any dues, fees or assessments forgiven?
4) Lot 774 bought @ 1 April 2001. Were there any dues, fees or assessments forgiven?

Tim engineered buying these lots with privledged information he had as manager of WPOA. Tim knowing he intended to purchase these lots got WPOA to pay for improvements to these lots. Tim forgave dues, fees and assessments owed WPOA and WRWSD to facilitate a favorable sale of these lots to himself.

WPOA Board members were not even aware work was being done on lots 773,774 or 1690. Money was alloted by WPOA in the budget for lake maintenance. Tim was basically given a blank check to spend as he saw fit. The WPOA Board did not exercise due diligence to determine where our money was being spent.

I ask WPOA Board investigate Tim and provide answers at the next meeting.

Concerned Property Owner,
Robert F. Rickling

*Robert F. Rickling*

Ⓤ

**Mr. Bert Freeman**
10 Wolverine Cv
Sardinia, OH 45171-9218
**18 October 2003**

Dear Bob:

Thanks for calling me back yesterday the
17th of October of 2003.  While we were in
disagreement about various issues, the
tone was one of mutual respect.

By the way, the combination appearances of
John Sayyah and yourself at the last WPOA
Board meeting was enough to turn two votes
[previously opposed to the recreation bldg.]
from "negative" to "positive", thereby
meaning a previous 5 to 3 vote went to a
7 to 2 vote.  Look forward to seeing you
again!

Respectfully,   *Bert Freeman*

enclosure: a copy of Judge Rice's order
          referring Sayyah's disqualif-
          ication of Judge Weber to his
          Senior Magistrate for A.S.A.P.
          review & recommendation. The
          Ohio Supreme Court is also now
          moving rapidly to rule on
          Sayyah's motions to disqualify
          Judge Foley.  Time to "lock
          & load" real soon!!!



November 05, 2003

TO: Robert F. Rickling
FROM: Lizabeth A. Freeman, President, W.P.O.A.
REGARDING: Your concerns expressed at October meeting

Dear Bob:

Contrary to your written assertion, Mr. Alsip's question in July
regarding the propriety of Tim O'Farrell's purchase of property
at Lake Waynoka <u>was</u> answered by me. I explained to Mr. Alsip
that there was no rule which would prohibit such a transaction.
I further explained that I had previously received complaints
from property owners, who contended that <u>only</u> property owners
should assume a management position, as they would then be more
sympathetic to the financial consequences associated with
property ownership. Perhaps it would be wiser for you to ask
questions and wait for answers before publishing such
allegations, particularly in light of the fact that you were
not present at the July meeting. I have been diligent about
getting answers for the questions asked of me, and I do not
intend to tolerate any further unfounded attacks.

An inquiry was made to answer your assertion of misconduct
regarding Mr. O'Farrell's property, and an investigation
followed. The manager was not a participant in this invest-
igation. After a complete review of the records by W.P.O.A.
office staff, I was assured that no special consideration
was extended to either Mr. O'Farrell, his former father-in-law,
or his sister. Each paid the appropriate initiation fees,
dues, and assessments. None was in arrears.

All dredging and drainage projects have proceeded in an orderly
progression, following the recommendations set forth by a
committee which studied the issue of controlled runoff at
W.P.O.A. request several years ago. The prudence of piping
some of these areas (as opposed to merely rocking "wash-out"
locations) was discussed at the February 2003 W.P.O.A. meeting.
Several lots have utilized this method since then. Others are
slated to be piped, but this is not necessary in all cases.
It was neither necessary nor expedient to determine a break-

-page one of four pages-

out cost for any of these individual projects.  Attached hereto
you will find a rather extensive list of dredging which has been
completed both during the 2002/2003 season and also previous
projects.  Certainly it is apparent that many property owners
have benefitted from the efforts of our maintenance crew.

I have every confidence that each of the current board members
is committed to carrying out his/her duties in a manner which
is not only diligent but with thoughtful consideration to the
needs of all property owners.  Your accusation to the contrary
is totally unwarranted and factually unjustified.

Although I have attempted to address your concerns in a respect-
ful manner which would be appropriate for any legitimate
question posed by a property owner, I am concerned that the tone
you have chosen to use too often resembles an inquisition
rather than an inquiry.  I have repeatedly stated that any
name-calling has no proper place at board meetings.  I further
affirm that neither will name-calling in written form be
tolerated.  Accordingly please be advised that any further
requests you may have of me will be addressed only if put
forward in a more civil tone, and only if void of baseless
allegations.

Lizabeth A. Freeman
President of W.P.O.A.

enclosure:  itemization of dredging history

-page two of four pages-

## 2002/2003 DREDGING

lot 2294          dredged & rocked

lots 735         dredged & cleaned out
and 743

lots 745         dredged & cleaned out
and 756

lot 775          dredged & piped

lots 1691        dredged & piped
and 1690

lots 771         cleaned out & stoned
and access
lot 775

lot 2635         piped

lot 70           cleaned out to permit water flow through
                 current pipe

### PREVIOUS DREDGING

lot 2323         dredged

lot 384          dredged & stoned, seeded in 2003

lot 328          dredged & stream beds stoned

lot 400          dredged

lot 428          dredged & stoned

lot 674          dredged & stoned

lots 700         dredged & stoned
and 701

lot 2649         dredged & stoned

-pagethree of four pages-

lot 2919        dredged & Stoned, regraded to assist
                with water drainage

lot 4003        dredged

lot 4029        dredged & stoned, made into waterfront lot

lot 1856        dredged

lots 1799       dredged twice
 through
 1806

-page four of four pages-



**MEMORANDUM**

TO:  Lou Headley

FROM:  Liz Freeman

RE:  Property Owner's Concern

DATE:  December 13, 2003


Attached please find a copy of the Ohio Revised Code §1702
under which W.P.O.A. was incorporated as a non-profit cor-
poration. I have also included a copy of Article X of the
W.P.O.A. Code of Regulations pertaining to financial books
and records.

W.P.O.A. financial balance sheets are attached monthly to the
W.P.O.A. agenda, and are available to any member at the
monthly meeting.  In addition to this, you are personally
given the full report on a monthly basis.  This is identical
to the material which is received by the W.P.O.A. Board of
Trustees. This level of disclosure has no precedent with other
Ohio lake communities, and indicates our good faith in this
regard.  You have also been advised that any question that you
may have will be researched by me, and will be answered by me
promptly.  I have been assured  by  Jay Cutrell  that
H.I.P.P.A. rulings prohibit the random dissemination of
employee personnel files.  While this law was intended to prevent
the disclosure of employee medical information, it is inclusive

of the other information within the personnel files.  This
Federal law takes precedence over the W.P.O.A. Code of
Regulations.

Your very public resignation and walk out prompted a
temporary "setback" in our efforts to control the Canada
geese population at Waynoka.  We look forward to alleviation
of this after the first of the year with a new chairperson
for the Environmental Task Force. You may feel free to pass
along any information you feel is pertinent to the new chair-
person at that time.  Prior to this appointment, any material
you wish to have published in the Newsletter regarding issues
of this Task Force need to be sent to me.  Your wish to be
relieved of your duties regarding this Task Force has been
respected.


Liz Freeman
President, W.P.O.A.

enclosures as outlined herein

## ARTICLE X
### FINANCIAL BOOKS AND RECORDS

**Section 1. Financial Books and Records.**

    The WPOA shall keep correct and complete books and records of accounts, and shall keep minutes of the proceedings of its BOARD and Committees.

**Section 2. Inspection of Records.**

    All books and records of the ASSOCIATION may be inspected by any MEMBER, his agent or attorney, for any proper purpose, at any reasonable time during normal business hours and upon reasonable advance notice. Inspection of records shall be under the supervision of the WPOA Manager or such staff employee as may be charged with the maintenance of such WPOA records. An appropriate charge may be assessed for copies.

**Section 3. Audit of Records.**

    An Annual audit of the WPOA's financial books and records shall be performed in the month of March by a qualified accountant (CPA) who shall attest to the financial condition of the WPOA to the BOARD.

## ARTICLE XI
### WAIVER OF NOTICE

**Section 1. Waiver of Notice.**

    Whenever any notice is required to be given under the provision of the Not-For-Profit Corporation Law of Ohio or under the provision of the Articles of Incorporation of the WPOA, the CODE or the WPOA, a waiver in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XII
### AMENDMENTS TO THE CODE OF REGULATIONS

**Section 1. Changes.**

    Proposed changes or amendments to add, amend, alter or repeal sections of these CODE can only be made by either a:
1.1    Two-thirds (2/3) vote of the entire BOARD.
1.2    Petition signed by not less than three hundred (300) MEMBERS.

**Section 2. Method of Changes.**

    All changes or amendments suggested must be voted on by the MEMBERS through either a:
2.1    Mailed ballot to all MEMBERS.
2.2    Special MEMBER Meeting (see ARTICLE III, Section 2).

Rev. 5, 10-96                  19

## ARTICLE X
## FINANCIAL BOOKS AND RECORDS

**Section 1. Financial Books and Records.**

The WPOA shall keep correct and complete books and records of accounts, and shall keep minutes of the proceedings of its BOARD and Committees.

**Section 2. Inspection of Records.**

All books and records of the ASSOCIATION may be inspected by any MEMBER, his agent or attorney, for any proper purpose, at any reasonable time during normal business hours and upon reasonable advance notice. Inspection of records shall be under the supervision of the WPOA Manager or such staff employee as may be charged with the maintenance of such WPOA records. An appropriate charge may be assessed for copies.

**Section 3. Audit of Records.**

An Annual audit of the WPOA's financial books and records shall be performed in the month of March by a qualified accountant (CPA) who shall attest to the financial condition of the WPOA to the BOARD.

## ARTICLE XI
## WAIVER OF NOTICE

**Section 1. Waiver of Notice.**

Whenever any notice is required to be given under the provision of the Not-For-Profit Corporation Law of Ohio or under the provision of the Articles of Incorporation of the WPOA, the CODE or the WPOA, a waiver in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XII
## AMENDMENTS TO THE CODE OF REGULATIONS

**Section 1. Changes.**

Proposed changes or amendments to add, amend, alter or repeal sections of these CODE can only be made by either a:

1.1    Two-thirds (2/3) vote of the entire BOARD.

1.2    Petition signed by not less than three hundred (300) MEMBERS.

**Section 2. Method of Changes.**

All changes or amendments suggested must be voted on by the MEMBERS through either a:

2.1    Mailed ballot to all MEMBERS.

2.2    Special MEMBER Meeting (see ARTICLE III, Section 2).

# ARTICLE X
## FINANCIAL BOOKS AND RECORDS

**Section 1. Financial Books and Records.**

The WPOA shall keep correct and complete books and records of accounts, and shall keep minutes of the proceedings of its BOARD and Committees.

**Section 2. Inspection of Records.**

All books and records of the ASSOCIATION may be inspected by any MEMBER, his agent or attorney, for any proper purpose, at any reasonable time during normal business hours and upon reasonable advance notice. Inspection of records shall be under the supervision of the WPOA Manager or such staff employee as may be charged with the maintenance of such WPOA records. An appropriate charge may be assessed for copies.

**Section 3. Audit of Records.**

An Annual audit of the WPOA's financial books and records shall be performed in the month of March by a qualified accountant (CPA) who shall attest to the financial condition of the WPOA to the BOARD.

# ARTICLE XI
## WAIVER OF NOTICE

**Section 1. Waiver of Notice.**

Whenever any notice is required to be given under the provision of the Not-For-Profit Corporation Law of Ohio or under the provision of the Articles of Incorporation of the WPOA, the CODE or the WPOA, a waiver in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

# ARTICLE XII
## AMENDMENTS TO THE CODE OF REGULATIONS

**Section 1. Changes.**

Proposed changes or amendments to add, amend, alter or repeal sections of these CODE can only be made by either a:

1.1    Two-thirds (2/3) vote of the entire BOARD.
1.2    Petition signed by not less than three hundred (300) MEMBERS.

**Section 2. Method of Changes.**

All changes or amendments suggested must be voted on by the MEMBERS through either a:

2.1    Mailed ballot to all MEMBERS.
2.2    Special MEMBER Meeting (see ARTICLE III, Section 2).

Rev. 5, 10-96                                    19

## ARTICLE X
### FINANCIAL BOOKS AND RECORDS

Section 1. Financial Books and Records.

The WPOA shall keep correct and complete books and records of accounts, and shall keep minutes of the proceedings of its BOARD and Committees.

Section 2. Inspection of Records.

All books and records of the ASSOCIATION may be inspected by any MEMBER, his agent or attorney, for any proper purpose, at any reasonable time during normal business hours and upon reasonable advance notice. Inspection of records shall be under the supervision of the WPOA Manager or such staff employee as may be charged with the maintenance of such WPOA records. An appropriate charge may be assessed for copies.

Section 3. Audit of Records.

An Annual audit of the WPOA's financial books and records shall be performed in the month of March by a qualified accountant (CPA) who shall attest to the financial condition of the WPOA to the BOARD.

## ARTICLE XI
### WAIVER OF NOTICE

Section 1. Waiver of Notice.

Whenever any notice is required to be given under the provision of the Not-For-Profit Corporation Law of Ohio or under the provision of the Articles of Incorporation of the WPOA, the CODE or the WPOA, a waiver in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XII
### AMENDMENTS TO THE CODE OF REGULATIONS

Section 1. Changes.

Proposed changes or amendments to add, amend, alter or repeal sections of these CODE can only be made by either a:

1.1    Two-thirds (2/3) vote of the entire BOARD.
1.2    Petition signed by not less than three hundred (300) MEMBERS.

Section 2. Method of Changes.

All changes or amendments suggested must be voted on by the MEMBERS through either a:

2.1    Mailed ballot to all MEMBERS.
2.2    Special MEMBER Meeting (see ARTICLE III, Section 2).

Rev. 5, 10-96                              19

## ARTICLE X
### FINANCIAL BOOKS AND RECORDS

Section 1. Financial Books and Records.

The WPOA shall keep correct and complete books and records of accounts, and shall keep minutes of the proceedings of its BOARD and Committees.

Section 2. Inspection of Records.

All books and records of the ASSOCIATION may be inspected by any MEMBER, his agent or attorney, for any proper purpose, at any reasonable time during normal business hours and upon reasonable advance notice. Inspection of records shall be under the supervision of the WPOA Manager or such staff employee as may be charged with the maintenance of such WPOA records. An appropriate charge may be assessed for copies.

Section 3. Audit of Records.

An Annual audit of the WPOA's financial books and records shall be performed in the month of March by a qualified accountant (CPA) who shall attest to the financial condition of the WPOA to the BOARD.

## ARTICLE XI
### WAIVER OF NOTICE

Section 1. Waiver of Notice.

Whenever any notice is required to be given under the provision of the Not-For-Profit Corporation Law of Ohio or under the provision of the Articles of Incorporation of the WPOA, the CODE or the WPOA, a waiver in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XII
### AMENDMENTS TO THE CODE OF REGULATIONS

Section 1. Changes.

Proposed changes or amendments to add, amend, alter or repeal sections of these CODE can only be made by either a:

1.1    Two-thirds (2/3) vote of the entire BOARD.

1.2    Petition signed by not less than three hundred (300) MEMBERS.

Section 2. Method of Changes.

All changes or amendments suggested must be voted on by the MEMBERS through either a:

2.1    Mailed ballot to all MEMBERS.

2.2    Special MEMBER Meeting (see ARTICLE III, Section 2).

## ARTICLE X
## FINANCIAL BOOKS AND RECORDS

Section 1. Financial Books and Records.

    The WPOA shall keep correct and complete books and records of accounts, and shall keep minutes of the proceedings of its BOARD and Committees.

Section 2. Inspection of Records.

    All books and records of the ASSOCIATION may be inspected by any MEMBER, his agent or attorney, for any proper purpose, at any reasonable time during normal business hours and upon reasonable advance notice. Inspection of records shall be under the supervision of the WPOA Manager or such staff employee as may be charged with the maintenance of such WPOA records. An appropriate charge may be assessed for copies.

Section 3. Audit of Records.

    An Annual audit of the WPOA's financial books and records shall be performed in the month of March by a qualified accountant (CPA) who shall attest to the financial condition of the WPOA to the BOARD.

## ARTICLE XI
## WAIVER OF NOTICE

Section 1. Waiver of Notice.

    Whenever any notice is required to be given under the provision of the Not-For-Profit Corporation Law of Ohio or under the provision of the Articles of Incorporation of the WPOA, the CODE or the WPOA, a waiver in writing signed by the person or persons entitled to such notice, whether before or after the time stated therein, shall be deemed equivalent to the giving of such notice.

## ARTICLE XII
## AMENDMENTS TO THE CODE OF REGULATIONS

Section 1. Changes.

    Proposed changes or amendments to add, amend, alter or repeal sections of these CODE can only be made by either a:

    1.1    Two-thirds (2/3) vote of the entire BOARD.

    1.2    Petition signed by not less than three hundred (300) MEMBERS.

Section 2. Method of Changes.

    All changes or amendments suggested must be voted on by the MEMBERS through either a:

    2.1    Mailed ballot to all MEMBERS.

    2.2    Special MEMBER Meeting (see ARTICLE III, Section 2).

Rev. 5, 10-96              19



No.: 04-3223

# UNITED STATES COURT OF APPEALS
# FOR THE SIXTH CIRCUIT



| | |
|---|---|
| John Sayyah, pro se, et al, ) | **Case No.: 04-3223** |
| ) | **(DISTRICT COURT NO.: 01-00459)** |
| Appellants, ) | |
| ) | |
| vs. ) | **MOTIONS FOR LEAVE OF COURT; FOR** |
| ) | **FRAUD UPON THE COURT; FOR REHEARING** |
| ) | ***EN BANC*; REQUEST FOR ORAL ARGUMENT** |
| Waynoka Prop. Owners ) | |
| Assoc., Inc., et al., ) | |
| ) | |
| Appellees. ) | |
| _____ ) | |

**COME NOW** Appellants seeking leave of court to raise the claim of FRAUD UPON THE COURT, and move this Court, pursuant to Rule 40(b)(2) of the Federal Rules of Appellate Procedure, for rehearing *en banc* of Appellants' petition for rehearing.

Appellants submit the grounds for granting said REHEARING involves "FRAUD UPON THE COURT" and other questions of exceptional importance and urgency, due in large part to the connivance of certain named judges and magistrates in which they have egregiously abridged Appellants' fundamental Rights to Due Process, depriving them of basic justice and fairness.

Appellants had hoped for better than this. They had hoped that maybe working through the system, things could change. But now, they feel completely betrayed by judges, magistrates, attorneys and a "system" that is more corrupt, more perverse, more evil to the core than those that stand before it to be judged. Worse, in good conscience, how can judges, magistrates, and attorneys raise their right hand, take an oath, and then proceed to betray it?

> **"And when he had made a scourge of small cords, he drove them all out of the temple, and the sheep, and the oxen; and poured out the changer's money, and overthrew the tables; and said unto them that sold doves, Take these things hence; make not my Father's house an house of merchandise."** *Matthew 21:13 (NKJV).*

This is the people's justice system, and they truly do want to know: "who's the lousy stinking low-life dirt-bag bastard stole their "Liberty and Justice for All?"  "There is a wind a blowing hot, ugly hot, people's gone restless, weary, tired, the scams, the lies, the grafts, the sell-outs, the ground rumbles—I tell you, man, she's ready to blow, and it's good riddance, I say..."

## Obstruction of Justice – Scope of Title 18 U.S.C. § 1503

Section 1503 of Title 18, United States Code, the term "officer of the court of the United States" includes judges, magistrates, clerk of courts, as well as each and every practicing attorneys at law, who "endeavor to influence, intimidate, or impede…the due administration of justice," by virtue of the omnibus clause, "obstructs justice."  *United States v. Saget*, 991 F.2d 702, 713 (11th Cir.) *cert. Denied*, 510 U.S. 950 (1993).

Furthermore, said "judges, magistrates…attorneys at law" may be ***criminally*** prosecuted under Section 1503 for endeavoring to obstruct justice, *United States v. Williams*, 874 F.2d 968, 976 (5th Cir. 1989); and it is no defense that such obstruction was unsuccessful, *United States v. Edwards*, 36 F.3d 639, 645 (7th Cir. 1994)—because the courts have ruled that Section 1503 applies to civil and criminal proceedings, *Roberts v. U.S.*, 239 F.2d 467, 470 (9th Cir. 1956).

## Fair Tribunal

As the Supreme Court of these United States in *Estes v. Texas*, 381 U.S. 532 (1965) has noted: "A fair trial in a fair tribunal is a basic requirement of due process.  Fairness of course requires an absence of actual bias in the trial of cases.  But our system of law has always endeavored to prevent even the probability of unfairness…[T]o perform its high function in the best way *'justice must satisfy the appearance of justice.'"* (Emphasis added).

## Fraud upon the Court

Appellants assert that it is clear, well-settled controlling law that any attempt to commit "fraud upon the court" vitiates the entire proceedings.  And, therefore, under controlling law, Appellants DEMAND that this Court immediately vacate its Mandate/Entry of 05/14/04 and do so forthwith pursuant to Rule 60(b).  *See* Moore's Federal Practice, & 60.28(2) (2nd ed. 1971);

*United States v. Karahalias,* 205 F.2d 331 (2ⁿᵈ Cir. 1953); *Regenold v. Baby People ex rel.*

*Chicago Bar Association v. Gilmore,* (1931), 345 Ill. 28, 46, 177 N.E. 710.

### Fed. R. Civ. P. 60(c)

Appellants allege from the beginning and throughout the course of this case *sub judice* that

Freeman and Yeager deliberately, unrelentingly committed frauds upon the court, and that issue

of Fraud upon the Court is a question of law. *Hardin v. Hardin,* 237 Ark. 237, 372 S.W.2d 260

(1963). On that, the record is clear and compelling. Appellants have met their burden. They

have, by clear, cogent and convincing evidence, more than demonstrated that indeed fraud was

egregiously committed upon the court by Yeager and Freeman.

### Appellants have met their Burden

They have dutifully proffered to this Court controlling laws that are proper procedures

required to "vacate mandate by motion" from the court that rendered it. *Hadden v. Rumsey

Products,* 196 F.2d 92 (2ⁿᵈ Cir. 1952); 7 Moore's Federal Practice, 60.38(3) (2ⁿᵈ ed. 1971); *U.S.

v. Karahalias,* 205 F.2d 331 (2ⁿᵈ Cir. 1953); *Butcher & Sherrerd v. Welsh,* 206 F.2d 259 (3ʳᵈ Cir.

1953), cert. denied 346 U.S. 925, 74 S.Ct. 312, 98 L.Ed. 418 (1954).

### Learned Court Must Know

Surely this most learned Court must know, as any court worth it salts knows, that "fraud upon

the court" makes void the orders, mandates, or judgments of the court from whence it issues.

Surely this most learned Court must know, as any court worth it salts knows, that whenever

**any** judge, magistrate, or attorney of the court commits **fraud** during a proceeding in the court,

said judge, magistrate, or attorney is engaged in the egregious dastardly act of "fraud upon the

court." *Bulloch v. United States,* 763 F.2d 1115, 1121 (10ᵗʰ Cir. 1985).

Surely this most leaned Court must know that said "fraud upon the Court" renders "all"

orders, mandates, or judgments "null and void" and must therefore be totally vacated.

Or, as Appellants highly suspect, the issues they raised, so well thought out, so meticulously

addressed, so totally fleshed out, with all the bells and whistles, with stated facts upon stated

facts, supported by an overwhelming abundance of diligently researched laws upon diligently researched laws, pertinent laws, laws on the very point, laws layered upon laws layered upon laws, more than was asked as for, more than was need, more than was required, more than beyond simple minimum requirements, beyond preponderance, even beyond a shadow of doubt, were, in truth, overlooked, were, in truth, misapprehended, and yet this Court, this most learned Court had the cold-blooded guts and AUDACITY to *pontificate* in its ORDER that quote:

> "Upon careful consideration, this panel concludes that it did not misapprehend or overlook any point of law or fact when it issued its order.  The petition for rehearing is denied."

### "Careful consideration?"  God help us!

Not even a third world country kangaroo court would have the chutzpa, the brass balls to dare palm off such a transparent "boiler-plated" cockamamie "wink and nod," the "fix is in" "get the friend off, at any price" decision.

### "Careful consideration"—A Joke

The problem is Appellants are not laughing!  And neither, Appellants suspect, will the 2800 property owners at Lake Waynoka.  While this Court may be a consolation to the crooks, the poor common folk, the elderly, the struggling young families, they all suffer.  Why?  Because of the well-known vast corruption that plagues, that eats away at the very innards of this country, and that is a scandal, an abomination before the sight of Man and God, that rots the very soul of this nation, and inch by inch destroys that which held such high hopes.  Damn you people!

The lying, the scheming, the scamming, the frauds played upon the court, does this Court not realize, does this Court not know history, the people, slow to react, will react.  "There is a wind a blowing hot...and I tell you, man, she's ready to blow, and it's good riddance, I say...

Appellants can no longer avoid the obvious.  This Court, as well as the district court, has resolutely refused to address any of the serious issues raised by Appellants.

First District Court Magistrate Judge Hogan, then District Court Senior Judge Weber, then District Court Senior Judge Rice, then District Court Magistrate Merz, and now 6th Circuit Court Judges Kennedy, Rogers and Cook have to a person, each and everyone, permitted and allowed Yeager's and Freeman's lies and misrepresentation to fester over these past three years without ever being fully addressed. Such an unforgiving scandal is a defilement and a fraud upon the court. The very willingness of said judges and magistrates to transparently defame and demean themselves is an affront to the very notion of liberty and justice for all. For these five (5) judges and two (2) magistrates to allow themselves the audacity to dishonor their offices and become an active party to cover up Yeager's and Freeman's lies, deceits, deception and false misleading statements and acts of perjury is in itself an unpardonable and horrific fraud upon the court. That fraud makes a mockery out of the judiciary due process.

### A Despicable, Egregious Evil

*This* cancerous fraud upon the court has created an environment of deep-seated bias, an unfairness that deprives Appellants their right under the constitution to due process before the law, and has made null the very essence of integrity, liberty, and justice for all.

**There can be no forgiveness!**

These learned judges and magistrates *must* surely know that judicial integrity is such a centrally important element in the achievement of a fair trial that the very appearance of justice is particularly vulnerable where *pervasive* issues of lying by attorneys and cover ups by judges and magistrates are involved? *Offutt v. United States,* 348 U.S. 11, 14 (1954).

These learned judges and magistrates *must* know that by their withholding, twisting or manipulating facts to achieve a particular end destroys and deprives a court the appearance of justice, which, in turn, undermines the very integrity of the system itself, inviting in its wake the bias and prejudice, which inflames passions? *Ramirez v. Ashcroft,* S.D. Fla. Case No. 01-4835.

This Court would be best advised to seriously ponder and consider that tampering with the administration of justice in the manner alleged herein, involves more than just an injury to a

single one or two litigants. It is an injury to the very institution designed to protect the public good—in which fraud should not be tolerated and still remain consistent with said good.

### <u>Demands</u>

Appellants demand:

1. Their constitutional rights to fairness and due process of law be restored back to them.

2. Magistrate Judge Hogan be sanctioned, for his covering up for two lying attorneys.

3. Judge Weber be immediately recused for egregious transparent abuse of discretion.

4. Yeager and Freeman be dealt with swiftly, severely and harshly.

Appellants further demand that they be treated with respect, not as dirt scumbags, but as decent honorable folk, with privileges of freedoms assured them under these United States.

And they demand these things in the name of "Liberty and Justice for All the Peoples."

No justice! No peace! While always ready for calm thinking, they are prepared to do battle, and by all that is holy, they do not bluff. They are prepared to go to hell and back. The time has come, the hour draws near, and they are prepared to put it all on the line. They are prepared for possible failure. But, then, how can one ever hope to succeed?

**And succeed they must and succeed they will.**

**WHEREFORE,** all premises having been properly considered, Appellants pray this Court for an immediate ORDER granting them their Motion for leave of Court, Motion for Fraud upon the Court, Motion for Rehearing *en banc,* and their request for oral argument.

*If it is not to be, fine. Appellants are prepared to file an immediate lawsuit.*

Respectfully submitted,


John Sayyah, *pro se*                    Brenda Frank, *pro se*
238 Waynoka Drive                         273 Yuma Drive
Sardinia, OH 45171                        Sardinia, OH 45171
(937) 446-4136                            (937) 446-1265

## <u>CERTIFICATION OF SERVICE</u>

We hereby certify that a copy of the foregoing was served by U.S. Mail on this 19st day of June, 2004 to Herbert Freeman, Attorney at Law, 114 East Eight Street, Cincinnati, OH, 45202, Stephen Yeager, Attorney at Law, One West Fourth Street, Suite 1800, Cincinnati, OH 45202, Michael P. Foley, Esq., 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, OH 45202, C. Blandford & K.R. Schoeni Attorneys at Law, Suite 800 PNC Center, 201 East 5th Street, Cincinnati, OH 45202, Steve Hengehold, Attorney at Law, 900 4th & Vine Tower, One West 4th Street, Cincinnati, OH 45202, Matthew R. Skinner, Attorney at Law, PO Box 145496, PO Box 14596, Shirley Hempfling, *pro se*, 5757 Cheviot Rd, Unit 3-B, Cincinnati, OH 45202.


John Sayyah, *pro se*                    Brenda Frank, *pro se*




**Fireman's Fund®**


**THE UNTHINKABLE HAPPENS...**

PI124 0304225356
Herbert F. Freeman                                                    March 17, 2004
Elizabeth A. Freeman
114 E 8th St.
Cincinnati, OH  45202-2102

Some small incident - someone trips on your home's front steps, a defamatory comment, or injury to a passenger in your car - can place your personal property and assets at risk. If the unthinkable happens, are you protected?

While your Fireman's Fund® homeowners policy* provides some of the broadest coverage available, it may not be enough to safeguard your assets in the event of a catastrophic lawsuit. Our *Personal Catastrophe Cover* (PCC) can help defend your property and assets. Providing additional personal liability coverage of up to $10 million, it offers you protection at home or away, in your car, boat or recreational vehicle.  Plus, PCC covers the legal defense costs for a covered loss.

If you are interested in adding PCC to your homeowners policy or to discuss other insurance needs, please contact Cic Agency, Inc. at (513) 684-7905.

Don't wait for the unthinkable; plan for it.

Sincerely,

Scott Garfield
Vice President, Personal Insurance
Sales & Marketing

* Insurance policy issued by The American Insurance Company, a member of The Fireman's Fund Insurance Companies®.

© 2004 Fireman's Fund Insurance Company, Novato, CA.                     PI124 Unthinkable0304N02267288

②

FILED

JUL 2 7 2004

JAMES BONINI, Clerk
CINCINNATI, OHIO

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION

**JOHN SAYYAH, BRENDA FRANK, ROBERT RICKLING**
<u>PRO SE</u> **PLAINTIFFS**

                              **CASE NO. C-1-04-395**

            **-VS-**

                              **SENIOR JUDGE SPIEGEL**
                              **MAGISTRATE JUDGE HOGAN**

**STEPHEN YEAGER, ET AL**
  **DEFENDANTS**

## <u>AMENDED ANSWER OF DEFENDANT HERBERT E. FREEMAN</u>

Now comes Herbert E. Freeman, an attorney at law but herin a <u>pro se</u> defendant, and amends his answer [note that the extended time to answer plaintiffs' complaint has not arrived, so leave of Court is not required].

Response 2[C] should read "Allegations in paragraph nine are denied, except to the extent that defendant proceeded to file an answer [pro bono] only for individuals who he either knew or had reason to believe were consenting to such representation. Plaintiff Rickling told Judge Weber under oath that he received a letter from defendant, instructing him to call or write to him if he was disinclined for any reason to consent to said representation, and furthermore Rickling acknowledged that he never either called or wrote to defendant, thereby allowing defendant to assume that Rickling consented to such representation".

Attached hereto as an exhibit is a photocopy [duplicate original] of said letter, and of the envelope used to send the original to Rickling.

Respectfully submitted,

*Herbert E. Freeman*

HERBERT E. FREEMAN [0005364]
114 EAST EIGHTH STREET
CINCINNATI, OHIO  45202-2102
(513) 381-8115  fax:  381-8153

I certify that an exact copy of this document was sent by ordinary United States Mail [postage prepaid] to the following individuals on the filing date time-stamped hereon:

Thomas B Bruns, Attorney at Law
105 East Fourth Street Suite 1400
Cincinnati, Ohio 45202-4035

Stephen Yeager, Attorney at Law
One West Fourth Street Suite 1800
Cincinnati, Ohio 45202

John Sayyah
238 Waynoka Drive
Sardinia, Ohio 45171

Brenda Frank
273 Yuma Drive
Sardinia, Ohio 45171

Robert Rickling
44 Comanche Drive
Sardinia, Ohio 45171

*Herbert E. Freeman*

Herbert E. Freeman

(A A)

**Group Health Associates**
*Physicians & Surgeons*

☐ Anderson Office
7691 Five Mile Road
Cincinnati, Ohio 45230
(513) 624-5535

☐ Clermont County Office
2245 Bauer Road
Batavia, Ohio 45103
(513) 732-0700

☐ Clifton Office
2915 Clifton Avenue
Cincinnati, Ohio 45220
(513) 872-2006

☐ Finneytown Office
8630 Winton Road
Cincinnati, Ohio 45231
(513) 729-1122

☐ Kenwood Office
8245 Northcreek Drive
Cincinnati, Ohio 45236
(513) 745-4777

☐ Mason Office
7423 Mason-Montgomery Road
Mason, Ohio 45040
(513) 229-8000

☐ Springdale Office
55 Progress Place
Cincinnati, Ohio 45246
(513) 346-5065

☐ Western Hills Office
2001 Anderson Ferry Road
Cincinnati, Ohio 45238
(513) 922-1645

Name: Freeman, Herbert          D.O.B.: 4-1-47

Address: _____     Date: 3-18-04

C.T. Scan Abdomen Pelvis
$\overline{C}$ + $\overline{S}$ Contrast

Label
Refill ____   Dx: Prostate Ca

_____, M.D.
Dispense as Written only if signed

Hari Kothegal, M.D.          _____, M.D.
(D.E.A.) _____ BK0690772
Dispense approved generic if signed

GHA-185-N1

---

**Group Health Associates**
*Physicians & Surgeons*

☐ Anderson Office
7691 Five Mile Road
Cincinnati, Ohio 45230
(513) 624-5535

☐ Clermont County Office
2245 Bauer Road
Batavia, Ohio 45103
(513) 732-0700

☐ Clifton Office
2915 Clifton Avenue
Cincinnati, Ohio 45220
(513) 872-2006

☐ Finneytown Office
8630 Winton Road
Cincinnati, Ohio 45231
(513) 729-1122

☐ Kenwood Office
8245 Northcreek Drive
Cincinnati, Ohio 45236
(513) 745-4777

☐ Mason Office
7423 Mason-Montgomery Road
Mason, Ohio 45040
(513) 229-8000

☐ Springdale Office
55 Progress Place
Cincinnati, Ohio 45246
(513) 346-5065

☐ Western Hills Office
2001 Anderson Ferry Road
Cincinnati, Ohio 45238
(513) 922-1645

Name: Freeman, Herbert          D.O.B.: 4-1-47

Address: _____     Date: 3-18-04

Whole Body Bone Scan

Label
Refill ____   Dx: Prostate Ca

_____, M.D.
Dispense as Written only if signed

Hari Kothegal, M.D.          _____, M.D.
(D.E.A.) _____ BK0690772
Dispense approved generic if signed

GHA-185-N1