UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN SAYYAH, *et al.*,                            Case No. 1:01-cv-459

      Plaintiffs,                            Watson, J.
                               Black, M.J.

vs.

WAYNOKA PROPERTY
OWNERS ASSOCIATION,
INC., *et al.*,

      Defendants.


**REPORT AND RECOMMENDATION[1] THAT:  (1) MOTION TO DISMISS BY DEFENDANTS DONALD E. FENDER, INC., JAMES L. BRIDGES, AND MILAN GORBY (Doc. 80) BE GRANTED; (2) MOTION FOR SUMMARY JUDGMENT BY DEFENDANT HERBERT E. FREEMAN (Doc. 86) BE GRANTED; (3) DEFENDANTS' MOTION FOR SUMMARY JUDGMENT (Doc. 99) BE GRANTED IN PART AND DENIED IN PART;  (4) PLAINTIFFS' CLAIMS ARISING UNDER STATE LAW BE DISMISSED WITHOUT PREJUDICE; (5) REMAINING MOTIONS BE DISMISSED AS MOOT; AND  (6) THIS CASE BE CLOSED.**


     Plaintiffs, John Sayyah and Brenda Frank, initiated this action by filing a *pro se*

complaint pursuant to the Racketeer Influenced and Corrupt Organizations Act (RICO),

18 U.S.C. § 1961 *et seq.*  (Doc. 1).  An amended complaint (doc. 4) was filed on

November 1, 2001, and on September 19, 2002, plaintiffs were granted leave to file a

second amended complaint.  (*See* doc. 74).

---

[1]     Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendation.

This matter is presently before the Court on a motion by defendants Donald E. Fender, Inc., James L. Bridges, and Milan Gorby to dismiss the second amended complaint (doc. 80); a motion for summary judgment by defendant Herbert E. Freeman (doc. 86); and a motion for judgment on the pleadings by the remaining defendants (doc. 99). Also pending are: plaintiffs' motion to strike (doc. 82); defendants' motion for a protective order (doc. 87); a motion by defendant Freeman for an order requiring plaintiffs to show cause why they should not be held in contempt and for sanctions (doc. 101); plaintiffs' motion for leave to reply to defendant Freeman's memorandum in opposition to their motion for reconsideration (doc. 120); defendant Freeman's motion to amend his Answer and for a temporary restraining order (doc. 123); and plaintiffs' motion for leave to file a motion for sanctions against defendant Freeman (doc. 126).

## I. BACKGROUND

Plaintiffs are residential property owners at Lake Waynoka in Sardinia, Brown County, Ohio. In their Second Amended Complaint (doc. 74-A), plaintiffs identify 42 defendants, including: the Waynoka Property Owners Association, Inc. ("WPOA"); the WPOA Board of Trustees ("WPOA Board"), the Waynoka Regional Water and Sewer District ("WRWSD"), the WRWSD Board of Trustees ("WRWSD Board"); Donald E. Fender, Inc. ("Fender"), a real estate firm; James L. Bridges, a real estate agent; Milan Gorby, a real estate agent and WRWSD Board member; Kay Bundy, Carol Dotson, and Vicki Johnson, office staff for the WPOA and the WRWSD; Timothy D. O'Farrell,

General Manager for the WPOA and the WRWSD; Randal Pike, Maintenance Supervisor

of the WPOA; George Culver, the WRWSD Superintendent of Utilities; Jay Cutrell,

Legal Counsel for the WPOA and the WRWSD; Herbert E. Freeman, a WPOA property

owner; Kamphaus, Henning & Hood, Certified Public Accountants, Inc. ("Kamphaus"),

accounting firm for the WPOA and the WRWSD; Fred Daulton, a Georgetown, Ohio,

police officer; Steve Saunders, a WPOA maintenance employee; Bob Lund, a computer

programmer; and Jerry Andrews, Andrew Bilhardt, Mary Chance, Joan Conners, Greg

Dawson, Lizbeth Freeman, Gary Greenlee, Ruth Hamm, Shirley Hempfling, Lowell

Jackson, Thomas Joyce, Nancy Klein, James Marck, William Marshall, Kenny Myers,

Sharon Otto, Betty Purdin, Robert Rickling, Arisotle Roussos, Jim Sanger, Carl

Seymour, James Taylor, and Tom Wyatt, current and former members of the WPOA

Board and the WRWSD Board.

According to the allegations in the second amended complaint, the WPOA was

formed in 1970 and, over the years, developed a subdivision in Brown County, Ohio.

(*See* doc. 74-A, ¶¶ 38-39).  Although a waterworks company was formed to provide

water, the subdivision lacked a central sewage system.  (*Id.* at ¶ 40).  WPOA property

owners were required to install septic tanks if they wished to build homes on their

individual lots.  (*Id.* at ¶ 42).

Around 1986, owners were told that the lake at Lake Waynoka was threatened by

pollution leaching from malfunctioning septic tanks and were encouraged to "get behind"

a plan to create a central sewage system. (*See id.* at ¶ 45). Plaintiffs allege that the explanations and rationale provided to WPOA property owners for the central system were unsubstantiated and that the lake was not in fact "threatened." (*See id.* at ¶¶ 46-50). The alleged misrepresentations led to the creation of a central system and, as a result, the destructions of on-site septic systems, which were valued, according to plaintiffs, at approximately one-and-a-half million dollars. (*Id.* at ¶ 53).

Plaintiffs allege next that defendant Fender was permitted to maintain a real estate office at the WPOA main office building where it was able to profit from transactions involving WPOA property without competition from other real estate brokers or agents. (*See id.* at ¶¶ 80, 88). Defendant Kamphaus, the accounting firm for the WPOA, allegedly underreported WPOA assets in order to conceal fraudulent real estate conveyances. (*See id.* at ¶ 95).

In April 2001, the WPOA Board and the WRWSD Board, with the knowledge of defendants O'Farrell and Cuttrell, imposed new minimum water usage rates. (*Id.* at ¶ 111). Plaintiffs maintain that the imposition of a new billing structure violates restrictive covenants that run with their land and is the result of "Un-American, tyrannical behavior." (*Id.*) Property owners have been required to bear the installation costs for water meters, allegedly a further violation of the restrictive covenants. (*See id.* at ¶¶ 133, 144, 148).

Plaintiff allege that Lake Waynoka property owners are the victims of numerous

additional "scams" involving, *inter alia*, the failure to pay overtime wages to WPOA employees (*see id.* at ¶¶ 155-56), alterations in dues and fees (*see id.* at ¶ 157), and the conversion and theft of WPOA property and equipment (*see id.* at ¶ 160-61).

Plaintiffs purport to bring this action as a derivative action under Fed. R. Civ. P. 23.1 and as a civil RICO action pursuant to 18 U.S.C. § 1964. They allege violations of the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.*; the Sherman Act, 15 U.S.C. §§ 1 and 2; the Clayton Act, 15 U.S.C. §§ 14-25; the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*; the Fair Labor Standards Act, 29 U.S.C. § 201 *et seq.*; and federal mail fraud statutes. In addition, plaintiffs assert state law claims for common law fraud and breach of fiduciary duty and maintain that defendants violated the Ohio fair housing law, Ohio Rev. Code Ann. § 4112.02(H), and Ohio real estate broker licensing law, Ohio Rev. Code Ann. § 4735.16(A) (requiring a licensed broker to maintain a sign stating that he is a licensed real estate broker).

Plaintiffs seek reimbursement of all dues, fees, and assessments over the amounts authorized by the restrictive covenants; reimbursement of the costs of their septic systems; compensation for the diminution in value of their real property; punitive damages; and declaratory and injunctive relief.

## II.    DEFENDANTS DONALD E. FENDER, INC., JAMES L. BRIDGES, AND MILAN GORBY'S MOTION TO DISMISS (Doc. 80)

On October 9, 2002, defendants Fender, Bridges, and Gorby, by counsel, filed a

motion to dismiss the second amended complaint for failure to state a claim, lack of

subject matter jurisdiction, and lack of standing and failure to comply with Fed. R. Civ.

P. 23.1.  For the reasons that follow, the motion to dismiss should be granted.

### A.    Failure to state a claim

In ruling on a motion to dismiss, the factual allegations in the complaint must be

taken as true and construed in a light most favorable to the plaintiff.  *See Miller v. Currie,*

50 F.3d 373, 377 (6th Cir. 1995).  Because plaintiffs brings this case *pro se*, the Court

liberally construes the allegations in their favor.  *Estelle v. Gamble,* 429 U.S. 97, 106

(1976); *see also Williams v. Browman,* 981 F.2d 901, 903 (6th Cir. 1992) (*pro se*

pleadings should be construed more liberally than pleadings drafted by lawyers). "A *pro

se* plaintiff's complaint is held to an especially liberal standard, and should only be

dismissed for failure to state a claim if it appears 'beyond a doubt that the plaintiff can

prove no set of facts in support of his claim which would entitle him to relief.'" *Herron

v. Harrison,* 203 F.3d 410, 414 (6th Cir. 2000) (quoting in part *Estelle,* 429 U.S. at 106).

However, the Court "need not accept as true legal conclusions or unwarranted factual

inferences." *Morgan v. Church's Fried Chicken,* 829 F.2d 10, 12 (6th Cir. 1987).

### 1.    RICO Claims

To recover in a civil RICO action, plaintiffs must prove: (1) that there were two or

more predicate offenses; (2) the existence of an enterprise engaged in or affecting interstate or foreign commerce; (3) a nexus between the pattern of racketeering activity and the enterprise; and (4) an injury to their business or property by reason of the above. *See Frank v. D'Ambrosi,* 4 F.3d 1378, 1385 (6th Cir. 1993) (*per curiam*).

To satisfy the first element, plaintiffs must prove each prong of the predicate criminal offenses. *See Central Distribs. of Beer, Inc. v. Conn,* 5 F.3d 181, 183-84 (6th Cir. 1993), *cert. denied,* 512 U.S. 1207 (1994). Moreover, only those acts itemized in 18 U.S.C. § 1961(1) can constitute predicate offenses for RICO violations. *Frank*, 4 F.3d at 1385. Such acts include acts indictable under 18 U.S.C. §§ 1341 (relating to mail fraud), 1343 (relating to wire fraud), and 1951 (relating to extortion). *See* 18 U.S.C. § 1961(1). If plaintiffs seek to base their RICO claim on allegations of mail or wire fraud, such allegations must be pleaded with sufficient specificity. *Schreiber Distrib. Co. v. Serv-Well Furniture Co.,* 806 F.2d 1393, 1400-01 (9th Cir. 1986).

After establishing that the defendant has committed one of the predicate offenses, *i.e.,* "racketeering activities," on two or more occasions, plaintiffs must then demonstrate that the offenses amount to a "pattern of racketeering activity." *See* 18 U.S.C. §§ 1961(5), 1962(a); *H.J. Inc. v. Northwestern Bell Tel. Co.* 492 U.S. 229, 237 (1989). A "pattern" for RICO purposes consists of at least two related predicate acts of racketeering activity, that together constitute a continuing course of fraudulent conduct. *See* 18 U.S.C. § 1961(5); *Vild v. Visconsi,* 956 F.2d 560, 565 (6th Cir.), *cert. denied,* 506 U.S. 832

(1992).

Finally, plaintiffs must demonstrate that a causal nexus exists between their injury and the predicate acts (the criminal RICO violations), or they have no standing to sue under § 1964(c). *Kramer v. Bachan Aerospace Corp.,* 912 F.2d 151, 154 (6th Cir. 1990). *See also Sedima, S.P.R.L. v. Imrex Co.,*473 U.S. 479, 495-97 (1985). Plaintiffs cannot allege merely that an act of racketeering occurred and that they suffered. They must show a causal connection between their injury and a predicate act. If no injury flowed from a particular predicate act, no recovery lies for the commission of that act. Thus, plaintiffs must plead and prove "proximate causation." *Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 265-68 (1992).

Plaintiffs allege that Fender, Bridges, and Gorby were involved in a "real estate scam." (Doc. 62, ¶¶ 55-94). They contend that these defendants violated their fiduciary duties (*id.* at ¶¶ 56-59), and that they were involved in antitrust activities affecting interstate commerce and transacted by phone and mail (*id.* at ¶ 69). Plaintiffs allege that the WPOA, the WPOA Board, and the WPOA manager (O'Farrell) put together a "sweetheart deal" to benefit Fender, Bridges, and Gorby that violated federal and state law (*id.* at ¶¶ 79-80) and that Fender, Bridges, and Gorby brokered real estate transactions that resulted in "kickbacks" for the WPOA manager (*id.* at 82-84).

Plaintiffs have failed to state a claim under the civil RICO statute because they have not alleged sufficient facts that, if taken as true, would establish a predicate offense.

The alleged violations of the antitrust laws, the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 *et seq.*, and the Federal Trade Commission Act, 15 U.S.C. § 41 *et seq.*, are not listed offenses under 18 U.S.C. § 1961(1). Additionally, the alleged violations of state law (the Ohio fair housing law, Ohio Rev. Code Ann. § 4112.02(H), and Ohio real estate broker licensing law, Ohio Rev. Code Ann. § 4735.16(A)) do not meet the requirements of the civil RICO statute because they are not "acts chargeable under State law and punishable by imprisonment for more than one year." *See* 18 U.S.C. § 1961(1)(A).

Plaintiffs' conclusory allegations that Fender, Bridges, and Gorby violated federal mail and wire fraud statutes are insufficient to establish a predicate offense because they are not plead with any specificity. *See Schreiber Distrib. Co.,* 806 F.2d at 1400-01.

Plaintiffs have also failed to state a RICO claim because, having failed to establish a predicate offense, they cannot establish a racketeering activity comprised of two or more such related offenses. *See* 18 U.S.C. §§ 1961(5), 1962(a).

Finally, plaintiffs have not alleged sufficient facts to show a causal nexus between the activities of Fender, Bridges and Gorby and the injuries allegedly suffered by plaintiffs, *i.e.,* the loss of value to their property, the destruction of septic systems, and the unauthorized assessment of fees.

## 2.    FTCA Claims

Plaintiffs have failed to state a claim upon which relief can be granted under the

Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 41 *et seq.*, because there is no private cause of action under the FTCA. *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986, 987 (D.C. Cir. 1973). *See also Federal Trade Comm'n v. Owens-Corning Fiberglas Corp.,* 853 F.2d 458, 464 (6th Cir. 1988), *cert. denied sub nom. United States Roofing Corp. v. Owens-Corning Fiberglas Corp.,* 489 U.S. 1015 (1989) (a private party may not invoke the jurisdiction of the federal courts to enforce the Federal Trade Commission Act).

### 3.    Anti-trust Claims

Plaintiffs' allegations that defendants have violated the Sherman and Clayton Acts are unavailing.

Under the statutory scheme set out in § 1 of the Sherman Act and §§ 4 and 16 of the Clayton Act, a person who is injured by a combination or conspiracy in restraint of trade or commerce has a private cause of action for damages or injunctive relief. *Hodges v. WSM, Inc.,* 26 F.3d 36, 38 (6th Cir. 1994). The Sherman Act provides in pertinent part that "[e]very contract, combination in the form of trust or otherwise, or conspiracy, in restraint of trade or commerce among the several States, or with foreign nations, is declared to be illegal." 15 U.S.C. § 1. Section 4 of the Clayton Act provides in part that "any person who shall be injured in his business or property by reason of anything forbidden in the antitrust laws" may sue therefor in any federal district court and may recover treble damages. 15 U.S.C. § 15. Section 6 of the Clayton Act authorizes

injunctive relief.  15 U.S.C. § 26.

To set forth a § 1 violation, plaintiffs must establish "that the defendants contracted, combined or conspired among each other, that the combination or conspiracy produced adverse, anticompetitive effects within relevant product and geographic markets, that the objects of and conduct pursuant to that contract or conspiracy were illegal and that the plaintiff was injured as a proximate result of that conspiracy."  *Crane & Shovel Sales Corp. v. Bucyrus-Erie Co.,* 854 F.2d 802, 805 (6th Cir. 1988).  More specifically, a plaintiff seeking to recover damages in a private action against a violator of antitrust laws must demonstrate more than an injury causally linked to an illegal presence in the market but an antitrust injury, which is to say "injury of the type antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful."  *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.,* 429 U.S. 477, 486 (1977).  "The injury should reflect the anticompetitive effect either of the violation or of anticompetitive acts made possible by the violation.  It should, in short, be 'the type of loss that the claimed violations ... would be likely to cause.'"  *Hodges,* 26 F.3d at 38 (citing *Brunswick Corp.,* 419 U.S. at 486).

Plaintiffs have failed to state a claim against Fender, Bridges, and Gorby under the antitrust statutes because they have not alleged that they have suffered an antitrust injury.

**4.    Interstate Land Sales Full Disclosure Act Claims**

The Interstate Land Sales Full Disclosure Act ("ILSFDA"), 15 U.S.C. § 1701 *et seq.*, provides in pertinent part that "a purchaser or lessee may bring an action at law or in equity

against a developer or agent if the sale or lease was made in violation of [15 U.S.C. §]

1703(a)" or "to enforce any rights under subsections (b), (c), (d), or (e) of section 1703."  15

U.S.C. § 1709(a), (b).  To qualify for ILSFDA protection, a plaintiff must be able to

demonstrate that he purchased the lot from a defendant who is a developer or a developer's

agent.  *Gibbes v. Rose Hill Plantation Dev. Co.,* 794 F. Supp. 1327, 1333 (D.S.C. 1992);

*Kicken v. Valentine Prod. Credit Ass'n,* 628 F. Supp. 1008, 1010 (D. Neb.), *aff'd,* 754 F.2d

378 (8th Cir. 1984).

Plaintiffs have failed to state a claim against Fender, Bridges, and Gorby upon which

relief can be granted under the ILSFDA because they have not alleged that they purchased

property from any of these three defendants or that these defendants acted on behalf of the

sellers from whom their property was purchased.  *See Kicken,* 628 F. Supp. at 1010.

## B.    Lack of Subject Matter Jurisdiction

Fender, Bridges, and Gorby argue, in the alternative, that plaintiffs' second amended

complaint should be dismissed for lack of subject matter jurisdiction.  Their argument has

merit, but only in part.  Contrary to their assertions, the Court exercises jurisdiction over

plaintiffs' federal claims pursuant to 28 U.S.C. § 1331.  Moreover, to the extent that

plaintiffs seek relief under state law, the Court exercises supplemental jurisdiction pursuant

to 28 U.S.C. § 1367.

Fender, Bridges and Gorby correctly state, however, that jurisdiction is lacking over

plaintiffs' claims under the FTCA.  As previously noted, a private party may not invoke the

jurisdiction of the federal courts to enforce the FTCA. *See Owens-Corning Fiberglas Corp.,* 853 F.2d at 464.

**C.     Lack of Standing and Failure to Comply with Fed. R. Civ. P. 23.1.**

Finally, defendants Fender, Bridges, and Gorby seek dismissal of the second amended complaint on the grounds that plaintiffs lack standing and that they have not met the prerequisites to proceed under Fed. R. Civ. P. 23.1.

An action under Rule 23.1 is derivative in nature; that is, it is brought by one or more shareholders or members on behalf of a corporation or an unincorporated association that has failed to enforce a right which may properly be asserted by it. *See* Fed. R. Civ. P. 23.1.

Rule 23.1 requires, in part, that:

> The complaint shall also allege with particularity the efforts, if any, made by the plaintiff to obtain the action he desires from the directors or comparable authority and, if necessary, from the shareholders or members, and the reasons for his failure to obtain the action or for not making the effort.

Fed. R. Civ. P. 23.1; *see Kemper v. American Broad. Cos.,* 365 F. Supp. 1272, 1273-74 (S.D. Ohio 1973). The demand on directors or comparable authority is not necessary, however, if the effort would be futile. *See Leff v. CIP Corp.,* 540 F. Supp. 857, 868 (S.D. Ohio 1982). Demand is presumptively futile where the directors are "antagonistic, adversely interested, or involved in the transactions attacked." *Lewis v. Graves,* 701 F.2d 245, 248 (2d Cir. 1983).

Plaintiffs state in the second amended complaint that they "tried over a long period of time some three years back to get a hearing before the WPOA and WRWSD Boards, but

were stonewalled and denied each and every time." (Doc. 62, ¶ 1).

The allegations in the second amended complaint, taken as a whole and liberally construed, are sufficient to support a finding that the WPOA and WRWSD Boards are "antagonistic, adversely interested, or involved in the transactions attacked" by plaintiffs to excuse them from the requirement to allege with particularity the efforts made to obtain the action they seek.

Defendants Fender, Bridges, and Gorby contend however that plaintiffs are not entitled to proceed under Rule 23.1 because they do not adequately represent the class of Lake Waynoka property owners.

Rule 23.1 provides in relevant part that a "derivative action may not be maintained if it appears that the plaintiff does not fairly and adequately represent the interests of the shareholders or members similarly situated in enforcing the right of the corporation or association." Fed. R. Civ. P. 23.1.

A preliminary affirmative determination that the named plaintiffs will fairly and adequately represent the interests of the other class members is not a prerequisite to the maintenance of the action. *Powers v. Eichen,* 229 F.3d 1249, 1254-55 (9th Cir. 2000). Rather, the rule provides only that the derivative suit may not be maintained if it appears that the named shareholder does *not* fairly and adequately represent the other shareholders. *Id.* (emphasis original). Moreover, there is no opt-out provision in shareholder derivative suit; all shareholders are bound by the outcome regardless of their objections. *See id.*

The Sixth Circuit has identified several factors which, if present, suggest inadequate representation.  *See Davis v. Comed, Inc.,* 619 F.2d 588, 593-94 (6th Cir. 1980).  These include:

> economic antagonisms between representative and class; the remedy sought by plaintiff in the derivative action; indications that the named plaintiff was not the driving force behind the litigation; plaintiff's unfamiliarity with the litigation; other litigation pending between the plaintiff and defendants; the relative magnitude of plaintiff's personal interests as compared to his interest in the derivative action itself; plaintiff's vindictiveness toward the defendants; and, finally, the degree of support plaintiff was receiving from the shareholders he purported to represent.

*Id.*; *see also Granada Invs., Inc. v. DWG Corp.,* 962 F.2d 1203, 1208 (6th Cir. 1992).

It appears, on the face of the second amended complaint and review of the record, that plaintiffs' interests are sufficiently antagonistic to preclude plaintiffs from proceeding under Rule 23.1.  First, the action is not brought solely "on behalf of a corporation or an unincorporated association," *see* Fed. R. Civ. P. 23.1, but against the WPOA and the WRSWD.  Additionally, many if not most of the individually named defendants are members of the class of Lake Waynoka property owners that plaintiffs purport to represent. Finally, a review of the Court's docket reveals other litigation currently pending between plaintiffs and certain of the defendants in the present action.  *See Sayyah, et al. v. Waynoka Property Owners Association, Inc., et al.,* No. 1:04-cv-194 (S.D. Ohio *filed* Mar. 10, 2004); *Sayyah, et al. v. Yeager, et al.,* No. 1:04-cv-395 (S.D. Ohio *filed* June 9, 2004); *Sayyah, et al. v. Waynoka Regional Water & Sewer District, et al.,* No. 1:04-cv-432 (S.D. Ohio *filed* June 25, 2004);  *Sayyah, et al. v. Waynoka Property Owners Association, Inc., et al.,* No. 1:04-cv-

-15-

442 (S.D. Ohio *filed* July 6, 2004).

Based on the relevant factors, the Court finds that plaintiff are not adequate representatives and should not be allowed to proceed under Fed. R. Civ. P. 23.1.

**D.    Summary**

Defendants Donald E. Fender, Inc., James L. Bridges, and Milan Gorby have filed a motion to dismiss the second amended complaint.  Their motion should be granted, and they should be dismissed as party defendants to this case, because it appears beyond doubt that plaintiffs can prove no set of facts in support of their claims which would entitle them to relief.  Moreover, plaintiffs lack standing to maintain this action under Fed. R. Civ. P. 23.1 because they do not "fairly and adequately represent the interests" of the other members of the purported class.

### III.  DEFENDANT HERBERT E. FREEMAN'S MOTION FOR SUMMARY JUDGMENT (Doc. 86)

On October 24, 2002, *pro se* defendant Herbert E. Freeman separately filed a motion for summary judgment pursuant to Fed. R. Civ. P. 56(c).  (*See* doc. 86).  As grounds for relief, Freeman states that plaintiffs have not established any nexus or connection between him and the federal statutes referenced by them, that they have failed to plead with sufficiency a RICO claim, and that plaintiffs do not adequately or fairly represent the interests of the class they seek to represent.  (*See id.*)

In response, plaintiffs contend that the motion is premature and ask that the Court withhold its ruling until they have had an opportunity to complete discovery.  (*See* doc. 89).

For the reasons that follow, Freeman's motion for summary judgment should be granted.

Plaintiffs' assertion that Freeman's motion is premature lacks merit. A motion for summary judgment may be filed "at any time." Fed. R. Civ. P. 56(b); *see Brill v. Lante Corp.,* 119 F.3d 1266, 1275 (7th Cir. 1997); *Henry v. Michigan Dep't of Corrs.,* No. 00-2051, 2001 WL 1631421, at *3 n.1 (6th Cir. Dec 18, 2001).

Moreover, plaintiffs have not provided grounds to warrant a continuance pending the completion of discovery.

Rule 56(f) of the Federal Rules of Civil Procedure provides as follows:

> Should it appear from the affidavits of a party opposing the motion [for summary judgment] that the party cannot for reasons stated present by affidavit facts essential to justify the party's opposition, the court may refuse the application for judgment or may order a continuance to permit affidavits to be obtained or depositions to be taken or discovery to be had or may make such other order as is just.

Fed. R. Civ. P. 56(f).

The Sixth Circuit has determined that a party opposing a motion for summary judgment and seeking a continuance pending completion of discovery pursuant to Fed. R. Civ. P. 56(f) must indicate to the district court, through affidavit or motion, its need for discovery, what material facts it hopes to uncover, and why it has not previously discovered the information. *See Cacevic v. City of Hazel Park,* 226 F.3d 483, 488-89 (6th Cir. 2000). General and conclusory statements, such as, that if given the opportunity for further discovery it would be able to successfully oppose the summary judgment motion, are

-17-

insufficient to justify a continuance.  *See id.* (citing *Radich v. Goode,* 886 F.2d 1391, 1393-94 (3d Cir. 1989)); *see also Ironside v. Simi Valley Hosp.,* 188 F.3d 350, 354 (6th Cir. 1999) ("Plaintiff's affidavit makes only general and conclusory statements regarding the need for more discovery and does not show how an extension of time would have allowed [relevant] information ... to be discovered.").

In the present case plaintiffs have failed to provide any support for their request for a continuance.

A motion for summary judgment should be granted if the evidence submitted to the Court demonstrates that there is no genuine issue as to any material fact, and that the movant is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(c).  *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322 (1986);  *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986).  The moving party has the burden of showing the absence of genuine disputes over facts which, under the substantive law governing the issue, might affect the outcome of the action.  *Celotex,* 477 U.S. at 323.  All facts and inferences must be construed in a light most favorable to the party opposing the motion.  *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587 (1986).

A party may move for summary judgment on the basis that the opposing party will not be able to produce sufficient evidence at trial to withstand a motion for judgment as a matter of law.  In response to a summary judgment motion properly supported by evidence, the nonmoving party is required to present some significant probative evidence which makes

it necessary to resolve the parties' differing versions of the dispute at trial. *Harris v. Adams,* 873 F.2d 929, 931 (6th Cir. 1989); *Sixty Ivy Street Corp. v. Alexander,* 822 F.2d 1432, 1435 (6th Cir. 1987). Conclusory allegations are not sufficient to defeat a properly supported summary judgment motion. *McDonald v. Union Camp Corp.,* 898 F.2d 1155, 1162 (6th Cir. 1990).

The Court's function is not to weigh the evidence and determine the truth of the matters asserted but to determine if there is a genuine issue of material fact for trial. *Anderson,* 477 U.S. at 249. The inquiry is whether the evidence presents a sufficient disagreement over the facts to require submission of the case to a jury or whether the evidence is so one-sided that one party must prevail as a matter of law. *Id.* at 251-52.

The Court is not duty bound to search the entire record in an effort to establish a lack of genuinely disputed material facts. *Guarino v. Brookfield Township Trustees,* 980 F.2d 399, 404 (6th Cir. 1992); *InterRoyal Corp. v. Sponseller,* 889 F.2d 108, 111 (6th Cir. 1989), *cert. denied sub nom. Superior Roll Forming Corp. v. Interroyal Corp.,* 494 U.S. 1091 (1990). Rather, the burden is on the nonmoving party "to present affirmative evidence to defeat a properly supported motion for summary judgment," *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479-80 (6th Cir. 1989), and to designate specific facts in dispute. *Anderson,* 477 U.S. at 250; *Guarino,* 980 F.2d at 404-05.

Freeman is entitled to judgment as a matter of law because plaintiffs have failed to present any evidence to show a disputed issue of material fact.

The allegations in the complaint which reference Freeman are limited to the

-19-

following:

    22.    Herbert E. Freeman (Freeman) is an attorney at law, a WPOA property owner, and husband of one of [the] members of the WPOA Board[;]

* * *

    30.    [D]irectly or indirectly, whether through active participation or silence, ... Freeman ... helped the Manager engage in a pattern of racketeering activity in the commission of at least two OR MORE acts of racketeering activity.

(Doc. 62, ¶¶ 22, 30).  Moreover, none of the 46 exhibits to the second amended complaint make any reference to Freeman.

Plaintiffs also cannot prevail on their claims against Freeman for substantially the same reasons that they cannot prevail against defendants Fender, Bridges, and Gorby.

As more fully explained above, plaintiffs have failed to present any evidence showing Freeman's involvement in any predicate offenses; the existence of an enterprise engaged in or affecting interstate or foreign commerce; a nexus between the pattern of racketeering activity and the enterprise; or an injury to his business or property by reason of the above. See Frank, 4 F.3d at 1385.  They have not presented any evidence nor even alleged any facts to establish Freeman's liability under the Interstate Land Sales Full Disclosure Act, 15 U.S.C. § 1701 et seq., and there is no private cause of action the Federal Trade Commission Act, 15 U.S.C. § 41 et seq.  Additionally, they have not presented any evidence showing Freeman's participation in the alleged conspiracy "in restraint of trade."

Finally, Freeman's objection to permitting plaintiffs to proceed under Fed. R. Civ. P.

-20-

23.1 should be sustained. As previously discussed, plaintiffs do not adequately represent the class of Lake Waynoka property owners, of which Freeman is a member.

## IV.  MOTION FOR JUDGMENT ON THE PLEADINGS BY REMAINING DEFENDANTS (Doc. 99).

On November 8, 2002, the remaining defendants, by counsel, filed a motion for judgment on the pleadings.  (Doc. 99).  As grounds for relief, these defendants contend that the federal statutes cited in the second amended complaint do not provide the Court with subject matter jurisdiction, that plaintiffs lack standing, and that plaintiffs failed to state a claim upon which relief can be granted.  (*See id.*)

The standard of review applicable to a motion for judgment on the pleadings under Fed. R. Civ. P. 12(c) is the same standard applicable to a motion to dismiss under Fed. R. Civ. P. 12(b)(6).  *Ziegler v. IBP Hog Mkt., Inc.,* 249 F.3d 509, 511-12 (6th Cir. 2001) (citation omitted).  The Court must construe the complaint in the light most favorable to the plaintiffs, accept all of the complaint's factual allegations as true, and determine whether the plaintiffs undoubtedly can prove no set of facts in support of their claim that would entitle them to relief.  *See id.*; *see also Smith v. City of Salem,* 378 F.3d 566, 567 (6th Cir. 2004).

### A.    Lack of Jurisdiction

Contrary to defendants' assertion, and notwithstanding plaintiffs' reference to venue rather than jurisdictional statutes, the Court has subject matter jurisdiction over plaintiffs' claims arising "under the Constitution, laws or treaties of the United States."  *See* 28 U.S.C. § 1331.  Furthermore, where the Court has original subject matter jurisdiction over questions

-21-

arising under federal law, the Court has supplemental jurisdiction "over all other claims that

are so related to claims in the action ... that they form part of the same case or controversy."

28 U.S.C. § 1367(a).

Thus, defendants' first ground does not, by itself, warrant dismissal of the second

amended complaint.

### B.    Lack of Standing

The Sixth Circuit has explained the standing requirement as follows:

> Standing is the threshold question in every federal case.  The Supreme
> Court has stated that the standing requirement limits federal court jurisdiction
> to actual controversies so that the judicial process is not transformed into a
> vehicle for the vindication of the value interests of concerned bystanders. To
> satisfy Article III's standing requirement, a plaintiff must have suffered some
> actual or threatened injury due to the alleged illegal conduct of the defendant;
> the injury must be fairly traceable to the challenged action; and there must be a
> substantial likelihood that the relief requested will redress or prevent the
> plaintiff's injury. Hence, the irreducible minimum constitutional requirements
> for standing are proof of injury in fact, causation, and redressability.  A
> plaintiff bears the burden of demonstrating standing and must plead its
> components with specificity.

> In addition to the constitutional requirements, a plaintiff must also
> satisfy three prudential standing restrictions. First, a plaintiff must assert his
> own legal rights and interests, and cannot rest his claim to relief on the legal
> rights or interests of third parties.  Second, a plaintiff's claim must be more
> than a generalized grievance that is pervasively shared by a large class of
> citizens.  Third, in statutory cases, the plaintiff's claim must fall within the
> zone of interests regulated by the statute in question. These additional
> restrictions enforce the principle that, as a prudential matter, the plaintiff must
> be a proper proponent, and the action a proper vehicle, to vindicate the rights
> asserted.

*Coal Operators & Assocs., Inc. v. Babbitt,* 291 F.3d 912, 915-16 (6th Cir. 2002) (internal

quotations and citations omitted).

Plaintiffs lack standing to pursue claims against defendants for alleged violations of the federal wire and mail fraud statutes because there is no private cause of action under these statutes. *See, e.g., Morganroth & Morganroth v. DeLorean,* 123 F.3d 374, 386 (6th Cir. 1997), *cert. denied,* 523 U.S. 1094 (1998) (mail fraud and wire fraud); *Ryan v. Ohio Edison Co.,* 611 F.2d 1170, 1177-79 (6th Cir. 1979) (mail fraud). *See also Wisdom v. First Midwest Bank,* 167 F.3d 402, 408 (8th Cir. 1999) (mail fraud, wire fraud, extortion).

Plaintiffs lack standing to pursue claims against defendants for alleged violations of the Federal Trade Commission Act ("FTCA") because there is no private cause of action under the FTCA. *Holloway v. Bristol-Myers Corp.,* 485 F.2d 986, 987 (D.C. Cir. 1973).

Plaintiffs lack standing to bring an action under the ILSFDA because they have not alleged that they purchased their lots from a defendant who is a developer or a developer's agent. *See Gibbes v. Rose Hill Plantation Dev. Co.,* 794 F. Supp. 1327, 1333 (D.S.C. 1992); *Kicken v. Valentine Prod. Credit Ass'n,* 628 F. Supp. 1008, 1010 (D. Neb.), *aff'd,* 754 F.2d 378 (8th Cir. 1984).

Plaintiffs also lack standing to bring an action under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.,* for the alleged failure to pay overtime wages. Standing to pursue an action for liability under the FLSA is statutorily limited to employees only. *See United Food & Commercial Workers Union, Local 1564 v. Albertson's, Inc.,* 207 F.3d 1193, 1200 (10th Cir. 2000). Plaintiffs have not alleged any facts to show that they are employees

of any of the defendants.

Additionally, plaintiffs lack standing to bring an antitrust action against defendants because they have not alleged an anticompetitive injury as a result of the alleged antitrust violations.  *See Hodges v. WSM, Inc.,* 26 F.3d 36, 38 (6th Cir. 1994).

In sum, defendants' motion for judgment on the pleadings should be granted in part because plaintiffs lack standing to pursue claims against defendants for alleged violations of the wire and mail fraud statutes, the FTCA, the ILSFDA, and the FLSA.

### C.    Plaintiffs' Civil RICO Claims

Plaintiffs also lack standing under RICO.

A plaintiff only has standing to seek a civil remedy under RICO if, and can only recover to the extent that, he has been injured in his business or property by the predicate act constituting the violation.  *Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S. 479, 496 (1985).  Injury requires proof of concrete financial loss.  *See Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1310 (9th Cir. 1992).

Private litigants can recover for racketeering injuries under 18 U.S.C. § 1964(c), but their injury must "flow from the commission of the predicate acts."  *Sedima,* 473 U.S. at 497. This means that plaintiffs must show some injury flowing from one or more predicate acts. That is, they must plead and prove "proximate causation."  *Holmes v. Securities Investor Prot. Corp.,* 503 U.S. 258, 265-68 (1992).  An intervening event severs the proximate causation between defendant's conduct and the alleged injury.  *See Saro v. Brown,* No. 00-

5384, 2001 WL 278284, at *2 (6th Cir. Mar. 15, 2001).

A civil RICO action does not require that there be a prior criminal conviction for the conduct forming the predicate act; however, the plaintiff must prove each prong of the predicate offense, or "racketeering activity," to maintain a civil action under the RICO statute. *See Central Distribs. of Beer, Inc. v. Conn,* 5 F.3d 181, 183-84 (6th Cir. 1993), *cert. denied,* 512 U.S. 1207 (1994). *See Sedima,* 473 U.S. at 488-92.

"To allege a violation of the mail fraud statute, it is necessary to show that (1) the defendants formed a scheme or artifice to defraud; (2) the defendants used the United States mails or caused a use of the United States mails in furtherance of the scheme; and (3) the defendants did so with the specific intent to deceive or defraud." *Schreiber,* 806 F.2d at 1399-1400. Therefore, plaintiffs cannot maintain a civil RICO claim against these defendants absent evidence that defendants made misrepresentations or omissions of material fact to plaintiffs as well as evidence that plaintiffs relied on those misrepresenta-tions or omissions to their detriment. *See Bender v. Southland Corp.,* 749 F.2d 1205, 1216 (6th Cir. 1984). *See also Blount Financial Svcs., Inc. v. Walter E. Heller & Co.,* 819 F.2d 151, 152 (6th Cir. 1987) (holding that the plaintiff must plead with particularity the false statements of fact made by the defendants to the plaintiffs and the facts showing that the plaintiff relied on those statements to its detriment); *Schreiber,* 806 F.2d at 1400 (noting that the plaintiff properly pleaded that the defendants had made misrepresentations to the plaintiff and that the plaintiff had detrimentally relied on those statements).

Plaintiffs allege, in part, that defendants perpetrated a "water and sewer scam" circulating fraudulent and misleading information that the Ohio Environmental Protection Agency ("Ohio EPA") was "deeply concerned' that the lake at Lake Waynoka was threatened with pollution leaching out of malfunctioning septic tanks. (*See* Doc. 74-A, ¶ 45). They allege that defendant O'Farrell, General Manager of WPOA and WRSWD, falsely stated "in print and at every publicly held meeting" that the Ohio EPA was threatening to condemn Lake Waynoka and demanding that the Lake Waynoka Community install a central sewer system. (*See id* at ¶ 50). Their allegations do not establish an injury sufficient to confer standing; they have not alleged any facts to show that they detrimentally relied on O'Farrell's assertions. *See Central Distribs. of Beer, Inc.,* 5 F.3d at 183-84.

They further allege that the threat of shutting off water gave "the enterprise" the means to assert control over the community and its property owners and the opportunity to increase fees and dues. (Doc. 74-A, ¶ 51). The alleged threat was made against one Timothy J. Rigdon, a nonparty (*see id.* at ex. 10), and does not establish an injury to either plaintiff, and, thus, does not establish standing for plaintiffs to pursue their claim.

Plaintiffs also allege that defendants O'Farrell, Cuttrell, Kamphaus and Fender "conspired" to violate Ohio real estate laws and fair practice guidelines. (*See id.* at ¶¶ 79-110). They have not however stated with any particularity the concrete financial harm to their business or property proximately caused by defendants' conduct.

Plaintiffs's allegations of theft in violation of state law (*see id.* at ¶¶ 159-161) do not

establish a basis for relief under RICO because they do not establish a concrete financial

injury to their business of business or property.  *See Sedima, S.P.R.L. v. Imrex Co.,* 473 U.S.

479, 496 (1985); *Imagineering, Inc. v. Kiewit Pac. Co.,* 976 F.2d 1303, 1310 (9th Cir. 1992).

Similarly, plaintiffs' allegations of mail fraud and fraudulent accounting practices by

defendant Kamphaus do not provide a basis for relief under RICO because again plaintiffs

did not allege sufficient facts to show injury to their business or property as a result of

Kamphaus's conduct.

Plaintiffs' claims against the office and maintenance staffs for the WPOA and

WRSWD and the individual members of the WPOA and WRSWD Boards of Trustees also

fail for lack of specificity.  Plaintiffs have not alleged sufficient facts to show that these

defendants[2] committed any predicate offenses or engaged in racketeering activity that

resulted in any compensable injury to plaintiffs.

Accordingly. defendants' motion for judgment on the pleadings should be granted in

---

[2]These defendants are: Kay Bundy, Carol Dotson, Vicki Johnson, office staff; Randall Pike, George Culver, Steve Saunders, maintenance staff; Bob Lund, computer programmer; and Jerry Andrews, Andrew Bilhardt, Mary Chance, Joan Conners, Greg Dawson, Lizbeth Freeman, Gary Greenlee, Ruth Hamm, Shirley Hempfling, Lowell Jackson, Thomas Joyce, Nancy Klein, James Marck, William Marshall, Kenny Myers, Sharon Otto, Betty Purdin, Robert Rickling, Aristotle Roussos, Jim Sanger, Carl Seymour, James Taylor, and Tom Wyatt, board members.

part because it appears beyond doubt that plaintiffs can prove no set of facts in support of their civil RICO claims that would entitle them to relief.

### D.    Plaintiffs' State Law Claims

Even when the complaint is construed in a light favorable to plaintiffs and all factual allegations are accepted as true, plaintiffs can prove no set of facts in support of the federal law claims that would entitle them to relief.  At best, plaintiffs may have alleged facts sufficient to survive dismissal of claims arising under various theories of state law, *e.g.,* breach of contract, breach of fiduciary duty, or breach of restrictive covenants.

To the extent that plaintiffs seek relief under state law, the Court may decline to exercise jurisdiction if plaintiffs' federal law claims are dismissed prior to trial.  *See* 28 U.S.C. § 1367(c); *see also Wolotsky v. Huhn,* 960 F.2d 1331, 1338 (6th Cir. 1992); *Gaff v. Federal Deposit Ins. Corp.,* 814 F.2d 311, 319 (6th Cir. 1987).  In the present case, plaintiffs' state law claims, if any, should be dismissed without prejudice.

## VI.  CONCLUSION

For the reasons stated, **IT IS THEREFORE RECOMMENDED THAT:**

(1) the motion by defendants Donald E. Fender, Inc., James L. Bridges, and Milan Gorby to dismiss the second amended complaint (doc. 80) be **GRANTED**; (2) the motion for summary judgment by *pro se* defendant Herbert E. Freeman (doc. 86) be **GRANTED**; (3) the motion for judgment on the pleadings by the remaining defendants (doc. 99) be **GRANTED;** (4) plaintiffs' state law claims be **DISMISSED** without prejudice; and (5) this

case be **CLOSED.**

In light of the recommendation that the motions to dismiss, for summary judgment, and for judgment on the pleadings should be granted and this case closed, **IT IS FURTHER RECOMMENDED** that the remaining motions – plaintiffs' motion to strike (doc. 82); defendants' motion for a protective order (doc. 87); a motion by defendant Freeman for an order requiring plaintiffs to show cause why they should not be held in contempt and for sanctions (doc. 101); plaintiffs' motion for leave to reply to defendant Freeman's memorandum in opposition to their motion for reconsideration (doc. 120); defendant Herbert E. Freeman's motion to amend his Answer and for a temporary restraining order (doc. 123); and plaintiffs' motion for leave to file a motion for sanctions against defendant Freeman (doc. 126) – be **DISMISSED AS MOOT.**


Date:  11/1/04          s/Timothy S. Black
                        Timothy S. Black
                        United States Magistrate Judge

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

JOHN SAYYAH, *et al.*,                         Case No. 1:01-cv-459

     Plaintiffs,                              Watson, J.
                                               Black, M.J.

vs.

WAYNOKA PROPERTY
OWNERS ASSOCIATION,
INC., *et al.*,

     Defendants.


**NOTICE**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to this Report and Recommendation within **TEN DAYS** after being served with a copy thereof. That period may be extended by the Court on timely motion by either side for an extension of time. All objections shall specify the portion(s) of the Report and Recommendation objected to and shall be accompanied by a memorandum of law in support of the objections. A party may respond to an opponent's objections within **TEN DAYS** after being served with a copy those objections. Failure to make objections in accordance with this procedure may forfeit rights on appeal. *See Thomas v. Arn,* 474 U.S. 140 (1985); *United States v. Walters,* 638 F.2d 947 (6th Cir. 1981).