IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

04 NOV 29   AN 10: 09

| | |
|---|---|
| John Sayyah, *pro se*, et al., | Case No.: 01-CV-459 |
| Plaintiffs, | District Judge Watson |
| | Magistrate Judge Black |
| v. | |
| | MEMORANDUM REQUESTING THIS |
| Waynoka Property Owners | COURT TO DENY DEFENDANTS |
| Association, Inc,, et al., | FENDER'S, BRIDGES' AND GORBY'S |
| | ["DEFENDANTS"] MEMORANDUM IN |
| Defendants. | OPPOSITION FILED 11/22/04 |

### Issue Still Pending

Plaintiffs would point out to Defendants and this Court that the issue of fraud upon the court is still "pending, and very much "alive." The fact is: the issue of fraud upon this Court was to have been heard "orally" before Judge Weber on 12/04/02 (Doc. #74). But due to Plaintiffs' motion for his recusal (Doc. #100), that hearing was cancelled by Judge Weber to be rescheduled "pending further Order of the Court [Doc. #102]." In fact, many of the 32 client/defendants were and are still very "anxious" to testify in behalf of Plaintiffs' claim of "fraud upon this Court," which facts are "itched in stone," well documented throughout the Court's official "Record," and "well" supported by controlling Federal (as well as State) Law.

### PLAINTIFFS' RESPONSE

### *A.* On page 2 of their "Memorandum of Law," Defendants argued that:

"[a] finding of fraud upon the court is justified only by the most egregious misconduct directed to the court itself, such as bribery of a judge or jury or fabrication of evidence by counsel, and must be supported by clear, unequivocal and convincing evidence."

### Plaintiffs' response is as follows:

While they could have moved on alternative grounds (and may in the future), Plaintiffs have utilized FRCP 60(b), stating on page 1 (**Court Doc. #134**):

1

> "[A] full hearing on a serious charge of 'Fraud Upon the Court," especially, as in this instant case, where there is more than ample evidence that throughout the entire proceedings,…Freeman deliberately and willfully committed numerous frauds upon this Court and upon the 32 specifically named defendants as well as upon Plaintiffs, by means of…ongoing scheme of multifarious lies, false statements and perjury."

**Plaintiffs went on to state, on page 2, that:**

> "The court record clearly shows that…Freeman lied, making false misleading statements that intentionally, egregiously and maliciously caused a fraud to be played upon this Court, which, by…deceitful and unethical behavior, violated Plaintiffs' rights to Due Process under the Fourteenth Amendment, depriving them of basic justice and fairness."

Plaintiffs will argue that their motions (**Court Doc. #24—12/14/01; Doc. #33—01/04/02; Doc. #37—01/14/02; Doc. #44—03/13/02; Doc. #51—04/05/02; Doc. #58—04/18/02; Doc. #70—06/04/02; Doc. #75—09/30/02; Doc. 82—10/15/02; Doc. #91—10/29/02; Doc. #93—11/04/02; Doc. #100—11/22/002; Doc. #105—12/09/02; Doc. #106—12/16/02; Doc. #116—11/13/03; Doc. #118—12/17/03; Doc. #121—01/05/04; Doc. #122—01/13/04; Doc. #124—02/24/04; Doc. #126—02/27/04; Doc. #134—07/06/04; Doc. #154—11/08/04; Doc. #157—11/15/04)** have "demonstrated" fraud upon this court, which, under controlling law, vitiates this Court's entire proceedings, thereby relieving Plaintiffs from all orders, judgments or any other matter issued to or by this Court. *United States v. Karahalias,* 205F.2d 331 (2nd Cir. 1953); *see, also Regenold v. Baby People ex rel. Chicago Bar Association v. Gilmore,* (1931).

## SOMETHING IS NOT KOSHER

From the very beginning and throughout the entire case at bar, Freeman deliberately, maliciously and unrelentingly committed numerous frauds perpetrated upon this Court, which this Court utterly failed to address, ruled out of hand, callously choosing rather to brush it all under the rug—***and did so in the face of controlling case laws cited by Plaintiffs.. Hardin v Hardin,*** 237 Ark. 237, 372 S.W.2d 260 (1963); *Hadden v. Rumsey Products,* 196 F.2d 92 (2nd Cir. 1952); *Butcher & Sherrand v. Welsh,* 206 F.2d 259 (3rd Cir. 1953); *see, also,* 7 Moore's *Federal Practice,* 60.38(3) (2nd ed. 1971).

Section 1503 of Title 18, United States Code, the term "officer of the court" includes judges, magistrates, clerk of courts, as well as each and every practicing attorney, who "endeavor to influence, intimidate or impede…the due administration of justice," by virtue of the omnibus clause, "obstructs justice," *United States v. Saget,* 991 F.2d 703, 713 (11th Cir. 1989), may be criminally prosecuted pursuant to Section 1503 for endeavoring to "obstruct justice." *United States v. Williams,* 874 F.2d 968, 976 (5th Cir. 1989); *United States v. Edwards,* 36 F.3d 639, 645 (7th Cir. 1994); *Roberts v. United States,* 239 F2d 467, 470 (9th Cir. 1994); *Landreth Timber Co. v. Landreth,* 471 U.S. 681, (1985) quoting *Blue Chip Stamps v. Manor Drug Stores,* 421 U.S. 723, 756 *1975); *see, also, Brogan v. United States,* 18 S.Ct. 805 (1998); *Griffin v. Oceanic Contractors, Inc.,* 458 U.S. 564, 571 (1982).

### On page 2 of their "Memorandum of Law," Defendants also argued that:

"In fact, a similar Motion for Fraud Upon the Court…this Court denied…[and] substantially the same issues are rehashed…[and] it too must be denied."

### Plaintiffs' Regurgitated Point

### *All means all.*

***Again*,** under controlling law, "fraud upon ***this*** Court" vitiates its entire proceedings, thereby relieving Plaintiffs from ***all*** orders, ***all*** judgments or ***all*** recommendations issued to or by this Court, and that includes ***all*** "denials." *U. S. v. Karahalias,* 205F.2d 331 (2nd Cir. 1953); *see, also Regenold v. Baby People ex rel. Chicago Bar Association v. Gilmore,* (1931).

### *B.* On page 3, as to Failure to Satisfy Rule 72(b)'s Requirement:

Plaintiffs believe then, as they believe now, federal controlling law dictates that fraud upon the court vitiates all of its orders, judgments or proceedings.  Accordingly, Plaintiffs believe that they are under no obligation to respond to Magistrate Black's Report and Recommendation, as it is invalid and voidable under all the above-cited federal controlling law.

*C.* **On page 4, Fender's Motion to Dismiss:**

Plaintiffs offer the ***above*** same arguments: federal controlling law dictates that fraud upon the court vitiates all orders, judgments and/or proceedings.

## CONCLUSION

As stated in other documents, Plaintiff Sayyah provided Chief John Dunn of Brown County Sheriff's Office, with incriminating documents, including the Fraud Examiners' "Report" which underscored the real estate scam involving Defendant O'Farrell, some WPOA Board of Trustee Defendants, Defendant Fenders, Inc., Defendant Bridges and Defendant Gorby, which Chief Dun then shared with the Ohio Bureau of Criminal Investigation and the Ohio Organized Crime Task Force, including the FBI, which are in the process of launching a full-blown probe of possible "organized crime activities." *See attached exhibits* **A** & **B**.

**WHEREAS,** Plaintiffs pray this Court **DENY** Defendants' Memorandum in Opposition.

John Sayyah, *pro se*
238 Waynoka Drive
Sardinia, OH 45171
937-446-4136

Brenda Frank, *pro se*
273 Yuma Drive
Sardinia, OH 45171
937-446-4136

## CERTIFICATION OF SERVICE

We hereby certify that a copy of the foregoing was served by U.S. Mail on this 26th day of November, 2004 to Herbert Freeman, Attorney at Law, 114 East Eight Street, Cincinnati, OH, 45202, Stephen Yeager, Attorney at Law, One West Fourth Street, Suite 1800, Cincinnati, OH 45202, Michael P. Foley, Esq., 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, OH 45202, Colleen Blandford, Attorney at Law, 1400Carew Tower, 441 Vince Street, Cincinnati, OH 45202, Matthew Skinner, Attorney at Law, P.O. Box 145496, Cincinnati, Ohio 45250, and Steven Hengehold, One West Fourth Street, Suite 900, Cincinnati, Ohio 45202.

John Sayyah, *pro se*

Brenda Frank, *pro se*

 **EXHIBIT**

 # NEWSWATCH
### A Public Service Newsletter

John Sayyah, editor and publisher, takes full responsibility for this Newsletter's content.

## Preliminary Findings Alleges Massive Fraud

### Thank You Bob Rickling

Our Lake Community should be grateful to Bob Rickling, who felt so outraged about what was going on here at our Lake community, he mortgaged his home and hired Fraud Examiner Terry Yoho, at a cost of over $25,000, to conduct a fraud audit of WPOA financials. Her *Preliminary Findings* are devastating. She states that: "The overall cost to the Association...have been incurred over an extended period of time, and the actual and potential *costs of FRAUD appear to be SIGNIFICANT*. (Emphasis added). To see and read for yourself, *see attached "complete" fraud examiner's "Findings."*

### Sayyah and Frank Vindicated

After a long, bitter and tedious "in-the-trenches" fight spanning six years, Sayyah and Frank are finally vindicated. Thanks to Bob, Yoho's "Findings" does much to support Sayyah's and Frank's Federal Racketeering Claims.

### Full Blown State & Federal Investigation Underway

Prior to this "Finding," John Dunn, Chief of Deputies of the Brown County Sheriff's Office, had logged over thirty-seven hours at Sayyah's home going over information and documentation gathered by Sayyah over the past six years. **NOTE**: Even without the "Findings," Dunn was convinced that the material he had gone over with Sayyah had enough "probable cause" to bring criminal charges against O'Farrell. So much so, Dunn contacted Bryan Carlson, head of the Ohio Bureau of Criminal Investigation, and shared the information with him. They both, in turn, contacted Ken Marshall, Director for Ohio's Organized Crime Task Force, and explained to him their concern. Upon which, both Carlson and Marshall made arrangement to meet Sayyah at his home and discuss the situation, which they did. Some days later, Sayyah was informed that Marshall had ordered Dunn and Carlson to put together "a

(Please continue on back page)

plan of action" as to what was needed in the way of manpower and resources to bring the case forward. Marshall also agreed with Sayyah that there was a need to have a court appoint a receiver to continue the Lake's affairs with an order to remove the manager and the board members, to safeguard WPOA assets and preserve its records and historical documents.

### WPOA Board Members Move to Fire O'Farrell
WPOA Board Member Lou Headly, George Alsip, and Sue Adams are calling for an "emergency" Executive Board Meeting to fire O'Farrell for cause.

### Criminal Fraud & Racketeering Claims
Briefly, Ms. Yoho, in her findings, stated the following:

- "The overall costs to the Association may be material, may have been incurred over an extended period of time, and the actual and potential costs of *fraud* appear to be *SUBSTANTIAL*. (Emphasis added).
- "The following issues indicate abuse and circumvention of: the system of internal controls; rules and guidelines established by the Association, and [O'Farrell's] personal use and abuse of association assets.
- "The Board Members have a fiduciary duty to protect the assets of the Association and this may be interpreted as a breach of fiduciary duty."
- "...lots are sold and the income is not reported."
- "Mr. O'Farrell has used WPOA assets for personal use..."
- "Mr. O'Farrell...confiscated equipment...did not reveal the theft...which indicates deception by Mr. O'Farrell to the Board..."
- "Illegal Property Transfers...increases the opportunity for fraud."
- "[166 lots were transferred]...and [only] one of these lots were entered as part of Waynoka's inventory."
- "A comparison of...lounge income...indicate theft."
- "...the potential costs of *fraud* appear to be *significant*."

This is your Lake Community. Why stand idle? We must stand behind Headly, Alsip and Adams in their legitimate "demand" to fire O'Farrell.

*Copy To SAyyah w.p.o.*

Mr. Thomas Grennan
Brown County Prosecutor

**EXHIBIT** B

Lake Waynoka Property Owners,

Sir the Sheriff's Office has received several reports of improper acts by the Property Manager Timothy O'Farrell, and possible involvement by some Board Members.

After meeting with past President, Board Members and concerned Property Owners it was very clear that some criminal activity was taking place. I put as much information together as I could with the help of the Property Owners and listed some violations of Ohio Law and sent the packet to the Major Crimes Unit of BCI&I. Brian Carlson has been working with me on this situation with Ken Marshall of Ohio Organized Crime Investigation Commission.

One of the request that I felt was imperative, The needed services of a Forensic Auditor. In phone conversations with Mr. Marshall I believe that his Office will be able to provide financial assistance to hire that person.

Because the crimes that seem to have taken place seem to be hidden in the everyday operations of the Lake it has not been easy to pick out the clear violations, as this was explained to the complainants they became impatient and hired there own Forensic Auditor.

I was presented a preliminary report by the Property Owners and it seems to me that the Auditor has made it clear that there are several concerns and violations of Law. **(report attached)**

Mr. Grennan I feel that Mr. O'Farrell has hidden large amounts of money and abused his rights in the use of property owned by the board to make money for himself this the report will reflect. I also feel that it will be some time before the Major Crimes Unit will act on this information and Mr. O'Farrell at the very least should be removed from his position and the Lake should be placed in the authority of a court appointed Custodian to pay bills and resolve everyday concerns until this situation is investigated further.

I have never dealt with a situation like this one and do not know if it is possible for the Court to take this type of action , but it is clear that money at the Lake is being moved and used by Mr. O'Farrell with or without the knowledge of the Board and this is money that belongs to the Property Owners not the Board and I feel that now that we are presented with this information the Property Owners deserve action to stop further misappropriations (thefts, frauds) against them as soon as possible.

Chief John T. Dunn
BCSO
11/16/04