IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO

| | |
|---|---|
| John Sayyah, *pro se*, et al., ) | Case No.: 01-CV-459 |
| Plaintiffs, ) | |
| vs. ) | Judge Watson |
| ) | Magistrate Judge Black |
| Waynoka Property Owners ) | |
| Association, Inc., et al., ) | MOTION TO INTRODUCE MATERIAL IN SUPPORT |
| ) | FOR PLAINTIFFS' CHARGE AGAINST DEFENDANT |
| ) | HERBERT FREEMAN FOR "FRAUD UPON THIS |
| Defendants.   ) | COURT" |

**Compelling New Material**

Freeman has lied to this Court on numerous occasions, and he is still at it again. But then what is new, the man is an unmitigated liar. In a "front page" article printed in *The News Democrat* this December 2, 2004, Freeman told Wade Linville, the news reporter, that "[he] has battled the lawsuits defending all 42 defendants free of charge...." Unbelievable, for Freeman to make such a false public statement to the citizens of Brown County—trying to make himself out to be some sort of a publicly spirited hero—what a terrible joke. *See attached exhibit* **A**.

This Court's Record clearly shows that Freeman has never legally or lawfully represented anyone but himself, and, once again, makes him what he is: a habitual liar.

**Other Lies and Misleading Statements**

- "Freeman said that three requests by Sayyah and Frank to dismiss judges have delayed all the defense motions for summary judgment." ***This is clearly a lie.*** There is absolutely nothing in the court record that supports Freeman's misleading and fraudulent statement.

- "Freeman claims motions by three defense attorneys to label Sayyah and Frank as 'vexatious litigators' have been stalled by Sayyah's requests to change trial dates due to illness, death in the family, a need for more time to prepare, or multiple motions for sanctions." ***These are clearly lies.*** There is absolutely nothing in the court record that supports Freeman's misleading and fraudulent statement.

- "Freeman and members of WPOA claim all efforts to move these cases to completion have been stalled by Sayyah and Frank's motions for the judge to remove himself by reason of prejudice just as the judges were about to rule on defense motions for summary judgment against Sayyah and Frank." ***This is a lie.*** There is absolutely nothing in the court record that supports Freeman's misleading and fraudulent statement.

## CODE OF PROFESSIONAL RESPONSIBILITY

The Canons of the Code of Professional Responsibility express the standards of conduct expected of lawyers in their relationship not only with the legal system and with the legal profession, but also express their conduct and relationship with the general public, as well.

For an attorney, any attorney, to lie to the court is egregious conduct and is considered "fraud upon the court," but it is just as reprehensible for an attorney to lie to the public.

Freeman not only has lied to this Court, but he has, as shown above, lied to the public.

**Ethical Considerations**

- EC 1-1: "Maintaining the integrity…is the ethical responsibility of every lawyer."
- EC 1-5: "[An attorney] should refrain from…morally reprehensible conduct…that may lessen public confidence in the legal profession."

**Canon 1: A Lawyer Should Maintain the Integrity of the Legal Profession**

Under DR 1-102, a lawyer shall not:

- (3) "Engage in illegal conduct involving moral turpitude."
- (4) "Engage in conduct involving dishonesty, fraud, deceit, or misrepresentation."
- (5) "Engage in conduct that is prejudicial to the administration of justice."
- (6) "Engage in conduct that adversely reflects on the lawyer's fitness to practice law."

**Canon 9: A Lawyer Should Avoid the Appearance of Professional Impropriety**

Under its ethical consideration, a lawyer should:

- EC 9-1: "…promote public confidence…in the legal profession."

- EC 9-2: "Public confidence...may be eroded by irresponsible and improper conduct by a lawyer...that...tend to subject him or the legal profession to criticism."

- EC 9-6: "Every lawyer owes a solemn duty to uphold the integrity and honor of his profession...to conduct himself so as to reflect credit on the legal profession and to inspire the confidence, respect, and trust...of the public; and to strive to avoid not only professional impropriety but also the appearance of impropriety."

To say the very least, Freeman has cast a long shadow over the legal profession.

Not only has Freeman lied on *__noted__* numerous occasions to this very Court, but he is now spilling his garbage of venomous lies on the public at large, lying through his damn teeth.

Respectfully submitted,

John Sayyah, *pro se*
238 Waynoka Drive
Sardinia, OH 45171
937-446-4136

## CERTIFICATION OF SERVICE

I, John Sayyah, hereby certify that a copy of the foregoing was served by U.S. Mail on this 7th day of December, 2004 to Herbert Freeman, Attorney at Law, 114 East Eight Street, Cincinnati, OH, 45202, Stephen Yeager, Attorney at Law, One West Fourth Street, Suite 1800, Cincinnati, OH 45202, Michael P. Foley, Esq., 900 Fourth & Vine Tower, Five West Fourth Street, Cincinnati, OH 45202, Colleen Blandford, Attorney at Law, 201 East Fifth Street, Cincinnati, Ohio 45202, Steven Hengehold, One West Fourth Stree, Cincinnati, Ohio 45202, Matthew Skinner, Attorney at Law, PO Box 145496, Cincinnati, Ohio 45250

John Sayyah, *pro se*

# Legal fight embattles Lake Waynoka

## Issue started over water and sewer installation

By WADE LINVILLE
Staff writer

LAKE WAYNOKA – A civil lawsuit filed by two Lake Waynoka residents is pending in U.S. Federal Court in Cincinnati. It is one of many suits that have been generated by two property owners concerning issues at the lake.

The barrage of suits are frivolus and without standing, say some in the community. Lake Waynoka, a gated community near the Sardinia area, has approximately 2,000 full time residents.

For more than three years Lake Waynoka property owners John Sayyah and Brenda Frank, while acting as their own attorneys, have pushed through the courts a civil Racketeer Influenced and Corrupt Organizations case naming 42 defendants who are all in some way involved with Lake Waynoka associations.

The original complaint was filed by Sayyah and Frank in November 2001. On Sept. 19, 2002, Sayyah and Frank were granted leave by federal court to file a second amended complaint, which they did.

Sayyah and Frank claim the Waynoka Property Owners Association, under the management of Tim O'Farrell, circulated false and misleading information during the year 1986, which led Lake Waynoka residents to believe Lake Waynoka was being threatened by pollution from malfunctioning septic systems and that the lake would be condemned within 10 years unless a central sewage treatment facility was constructed.

Sayyah and Frank allege this information was misleading causing Lake Waynoka property owners to vote in favor of building a centralized sewage treatment facility within the community.

Sayyah and Frank claim the lake was not in fact "threatened."

Sayyah was very concerned with the increase in minimum water usage rates imposed in April 2001, which was approved by WPOA and Waynoka Regional Water and Sewer District boards without allowing all Lake Waynoka property owners to vote on the matter. Sayyah and Frank claim Lake Waynoka property owners were also required to bear the cost for the installation of water meters on their properties. According to Sayyah, the new water billing structure violates restrictive covenants.

The property owners involved claim that the excessive billing for sewage and water supplies have forced some to mortgage their homes.

"My family has suffered greatly," Frank said. Frank claims she had to mortgage her home in Lake Waynoka to obtain the money to pay a $6,050 bill she received from WRWSD for the sewage hookup after O'Farrell threatened to shut off her water and condemn her home for not paying the bill.

Since the construction of the central sewer system in Lake Waynoka and the increase in water usage rates, Sayyah, Frank and other unhappy Lake Waynoka property owners attempted to get more involved with the operations of WPOA and WRWSD, which led them to believe there may be unlawful acts taking place in the WPOA and WRWSD offices.

A letter from Chief John Dunn, of the Brown County Sheriff's Office, to Brown County Prosecutor Thomas Grennan dated Nov. 16, 2004 states the need for a forensic auditor to be assigned to the WPOA in order to conduct a complete investigation of WPOA financial records. This was after Dunn supposedly spent hours reviewing documents at Sayyah's home and apparently received complaints from property owners within Lake Waynoka, who were claiming they suspected illegal use of funds by O'Farrell and other members of WPOA.

The letter states that "Because the crimes that seem to have taken place seem to be hidden in the everyday operations of the Lake it has not been easy to pick out clear violations, as this was explained to the complainants they became impatient and hired their own forensic auditor."

A concerned Lake Waynoka property owner, Robert Rickling, hired Flagel, Huber, Flagel and Co of Cincinnati, a group of certified public accountants, to complete the audit of WPOA and WRWSD financial records. The company submitted their preliminary findings Nov. 8, after three days at WPOA. Their preliminary report stated, "the actual and potential costs of fraud appear to be significant." The findings also state the losses sustained by members of the association are related to the following activities: violation of board directives, check writing authority abuse, internal control issues/circumvention of control, payroll fraud, co-mingling equipment and funds, personal use of WPOA assets, property purchases/sales reported incorrectly, illegal property transfers, allegations of kickbacks, audited financial statements and accounting issues, accounts receivable and bad debt write-off, as well as other issues.

The preliminary report said checks were issued for amounts over the signing authority without an additional board member's signature. The report also points out O'Farrell is shown on certain WPOA checks as the "payee" and the person who signed the checks, which illustrates internal control issues. The audit report is listed as further evidence included in Sayyah and Frank's rebuttal to Magistrate Judge Timothy Black's motion in Sixth Circuit Appeals Court in Cincinnati recommending dismissal of the civil RICO case for lack of standing, which was filed Nov. 1, 2004. Sayyah and Frank had 10 days from the time they received the recommendation for dismissal from M.J. Black to supply an acceptable rebuttal and keep the case active. The rebuttal was filed by Sayyah and Frank and they are awaiting a reply in regards to the rebuttal.

O'Farrell has been general manager of WPOA for several years and is also general manager of WRWSD. There seems to be a concern with some property owners within Lake Waynoka that O'Farrell's role as manager of both WPOA and WRWSD is a conflict.

Among the 42 defendants in the lawsuit is attorney Jay Cutrell. For years, Cutrell has served as WPOA/WRWSD legal counsel and plaintiffs Sayyah and Frank allege that Cutrell was involved in the water/sewer issue. The plaintiffs allege that Cutrell should have protected the interest of Lake Waynoka property owners during the approval of the boards to increase water usage rates. The plaintiffs complain that Cutrell violated restrictive covenants by allowing WPOA/WRWSD boards to hold closed meetings and refusing to allow Lake Waynoka land owners to participate in the decision making process.

EXHIBIT A

# Legal: Freeman represents 42 named in lawsuit

Donald Fender, Jim Bridges and Milan Gorby of Donald E. Fender, Inc. have been accused of giving kickbacks to O'Farrell for allowing them to open an office within the Lake Waynoka community and for holding back competition from other real estate agencies.

Sayyah and Frank seek $7.5 million in damages which include: the reimbursement of all dues, fees and assessments over the amounts authorized by Lake Waynoka restrictive covenants; reimbursement of all costs of Lake Waynoka property owners septic systems that were destroyed when a centralized sewage system was installed; compensation for the loss in value of their real property owned in Lake Waynoka; and punitive damages.

Attorney Herbert Freeman, who is also a Lake Waynoka resident and defendant in the RICO case, has been representing all 42 defendants pro bono. Freeman and other members of WPOA describe Sayyah as a "vexatious litigator" whose intention has been to hold up the court system on a case that has no merit. A "vexatious litigator" is described as a person who has habitually, persistently and without reasonable grounds engaged in vexatious conduct in a civil action or actions.

Freeman said that three requests by Sayyah and Frank to dismiss judges have delayed all the defense motions for a summary judgment. Freeman claims motions by three defense attorneys to label Sayyah and Frank as "vexatious litigators" have been stalled by Sayyah's requests to change trial dates due to illness, death in the family, a need for more time to prepare, or multiple motions for sanctions. According to Freeman, Sayyah has avoided four scheduled depositions by a defense attorney while being sued for slandering WRWSD board member Tom Joyce. Freeman and members of WPOA claim all efforts to move these cases to completion have been stalled by Sayyah and Frank's motions for the judge to remove himself by reason of prejudice just as the judges were about to rule on defense motions for summary judgment against Sayyah and Frank.

Freeman and some WPOA/WRWSD board members said that Sayyah became hostile when water usage rates were raised, because he was using approximately 119,000 gallons of water during a one month billing period in 2001 and that Sayyah actually spit at an employee of WRWSD when they showed up at his home to check his water meter for problems.

Freeman and WRWSD board members have supplied a past due water/sewer bill from 2002 of Sayyah's as evidence for the defense in the case.

Sayyah and Frank have filed a total of six lawsuits against Lake Waynoka in federal court and 12 lawsuits in the Brown County Court of Common Pleas. According to Freeman, lawsuits have caused Lake Waynoka's basic insurance premiums to increase from $1,900 per year to $10,900 per year and the insurance deductible to increase from $5,000 per lawsuit to $25,000 per lawsuit. Their insurance company has already paid $27,000 to lawyers for defense of the current lawsuits, for answering Sayyah and Frank's multiple motions to resubmit claims for summary judgment and for the removal of judges from cases.

Freeman claims the lawsuits have intimidated Lake Waynoka residents to not attend board meetings and not run for open seats on WPOA/ WRWSD board of trustees.

"The intent is to intimidate decent people from running for these jobs," Freeman said. For years, Freeman has battled the lawsuits defending all 42 defendants free of charge, while at the same time battling his own serious medical problems. Freeman seems to feel that he just wishes it would end.

"The state court cases are going down the toilet and the federal cases as well," Freeman said as he described the status of all 18 cases filed by Sayyah and Frank. While on the other end, Sayyah claims he can carry on the lawsuits "until hell freezes over."